**Ben L. HILLIKER, Appellant,**

v.

**Virginia D. HILLIKER, Appellee.**

**No. S–1505.**

Supreme Court of Alaska.

June 3, 1988.

Sema E. Lederman, Kenneth P. Eggers, Groh, Eggers & Price, Anchorage, for appellant.

Max F. Gruenberg, Jr., Gruenberg & Clover, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Justice.

Permanent alimony may be awarded when it is "just and necessary." AS 25.24.-160(3). We have repeatedly held that such an award should not be made where the court can provide for the reasonable needs of the spouse seeking alimony from the property available for division in a divorce proceeding. Where property can provide support, alimony is neither just nor necessary. *Miller v. Miller,* 739 P.2d 163, 164 (Alaska 1987); *Nelson v. Nelson,* 736 P.2d 1145, 1147 (Alaska 1987); *Carlson v. Carlson,* 722 P.2d 222, 225 (Alaska 1986); *Gabaig v. Gabaig,* 717 P.2d 835, 843 (Alaska 1986); *Schanck v. Schanck,* 717 P.2d 1, 5 (Alaska 1986); *Malone v. Malone,* 587 P.2d 1167, 1168 (Alaska 1978); *Messina v. Messina,* 583 P.2d 804 (Alaska 1978). The trial court's award of $1,200 per month in permanent alimony to Virginia Hilliker in this case is in conflict with this rule. For this reason, and because the court erred in calculating Virginia's income and taxes, we reverse the alimony award and remand this case for further proceedings.

Ben and Virginia Hilliker were married in 1954 and divorced in 1986. At the time of trial, Ben was 53 years old and Virginia was 52. Both are college graduates. They have one adult son. Ben is employed by the Alyeska Pipeline Service Company and earns $103,500 per annum. Virginia is employed as a secretary/receptionist by the Anchorage School District. Her annual salary is $18,800.

Although the primary issue in this case concerns alimony, this issue cannot be adjudicated without examining the property of the parties and how it was divided. Virginia was awarded the family home. The court valued the equity in the home at $97,000. She also received a 10% interest in real property valued at $12,500 and personal property valued at $35,000. Virginia also received one-half of Ben's state pension which the court did not value but which, in total, pays $4,800 annually for Ben's life.

Ben was awarded a tax deferred savings plan, which the court valued at $104,000. This valuation, however, does not reflect the actual amount in the plan at the time of trial. The parties agree that at the time of trial there was some $85,000 in the savings plan.[1] Ben received real property worth $8,000 and personal property valued at $18,400. He also received one-half of his state pension and his entire Alyeska pension which was fully vested. The court was not presented with evidence concerning the present value of the Alyeska pension, but made a finding that it would be "at least $40,000 to $50,000." Thus, excluding Ben's state pension which was unvalued but split equally, Virginia received property worth $144,500 and Ben received property worth from $151,400 to $161,400.

The trial court determined that Virginia's yearly needs, based on a standard which the court described as "at not a bare minimum, but on the other hand not that to which she would have enjoyed had the marriage continued," totalled $25,000, after taxes. Virginia's annual salary of $18,800, plus the permanent alimony she is to receive from Ben, $14,400 annually, plus the $2,400 annually which she will receive as her share of Ben's state pension, amount to

---

1. Ben claims that $21,000 was withdrawn from the plan in 1984, prior to the divorce action, in order to reduce the parties' joint tax liability. Virginia, on the other hand, suggests, by citation to *Brooks v. Brooks,* 677 P.2d 1230, 1234 (Alaska 1984) (property given to children of a prior marriage without consent of non-donor spouse treated as an asset of the donor spouse for property division purposes), that the court was right to ignore these withdrawals because they did not benefit her and were made without her consent. The trial court made no findings on this point.

an annual gross income of $35,600. After September, 1997, the alimony obligation drops to $800 per month. It ends if Virginia remarries or either party dies.

In addition to arguing that the alimony award violated the rule requiring that support needs be met through property division rather than alimony where possible, Ben makes four specific arguments concerning the court's evaluation of Virginia's income and needs. He contends that: (1) the court erred in failing to consider the income producing potential of the equity in the four bedroom house awarded Virginia; (2) the trial court's calculation of Virginia's needs is too high; (3) Virginia's net income was miscalculated; and (4) the court erred in valuing Virginia's earning capacity at no more than $18,800 per year.

■ We agree that the trial court should have considered the income producing potential of the home awarded to Virginia. The trial court found that the property need not be considered as income producing. The court stated:

> The largest piece of property received by the Plaintiff is the house, which has been the family residence of the parties over many years, and the court finds that it is the least expensive accommodation for the plaintiff to reside in available. That is, the house costs only $538.00 per month, which is less than any other accommodation could be obtained for.

Ben correctly points out that if Virginia were to sell the house she could invest the proceeds.[2] The income which she received from the investment of the sale proceeds would be available to defray in part the $25,000 in living expenses which the court found to be her reasonable needs, including costs of living in a smaller dwelling. Even if the cost of living in a smaller dwelling were not cheaper than the $9,637 annual cost[3] of living in her current house, selling the house would free an asset to produce income. It is reasonable to retain the house only if the additional income resulting from its sale would be equalled or exceeded by the additional cost of substitute housing. This should be the subject of an evidentiary hearing and findings on remand.

■ Concerning the court's assessment of Virginia's needs, Ben argues that $2,360 per year which was allowed for gifts, donations, pet care, and vacations should be stricken because such items are inappropriate in determining reasonable living expenses. Further, Ben argues that a $1,500 annual amount for clothing and $1,200 for automobile replacement were too high. We reject these arguments. Each of the items seems reasonably includable in an annual budget and the amount for each is supported by the evidence.

■ We agree with Ben's contention that the trial court erred in calculating Virginia's net income. The court apparently assumed that Virginia would pay $10,600 in taxes on a gross income of $35,600.[4] In 1986, when the decree was entered, a single taxpayer who did not itemize deductions would incur a total income tax liability of approximately $7,634 on a gross income of $35,600.[5] Because of this error, Virginia's income, as augmented by the alimony award, exceeds her needs and the alimony award is, to that extent, unauthorized by law.

---

**2.** In other divorce contexts we have recognized that it is sometimes necessary for a party to sell or reorganize his or her assets. *Monsma v. Monsma,* 618 P.2d 559, 560 (Alaska 1980); *Allen v. Allen,* 554 P.2d 393, 395–96 (Alaska 1976).

**3.** The following housing costs were determined by the trial court:

| | |
|---|---|
| Mortgage—Property Tax | $5,880 |
| Property Maintenance and Repairs | 1,200 |
| Utilities (excluding telephone) | 2,557 |

The court also found Virginia's insurance expenses to be $600. This included homeowners' insurance and other insurance, but no specific allocation was made among types of insurance.

**4.** Pursuant to the trial court's decree, Virginia's annual gross income would amount to $35,600 per year. *See supra* page 4. The trial court found Virginia's reasonable living expenses to be approximately $25,000 per year. It appears the difference between these amounts of $10,-600 reflects the trial court's estimate of the taxes on Virginia's gross income.

**5.** On remand, the court should calculate Virginia's tax liability under current law.

■ Finally, with respect to the argument that Virginia's earning capacity was greater than $18,800 per year, Ben relies on the fact that Virginia had held a higher paying administrative position three years before the divorce was filed. While that fact is certainly some evidence of a higher earning capacity, there was no showing that any higher paying position was available to Virginia at the time of trial or that she had failed to seek the highest paying position available which was suitable to her talents. Under these circumstances, we cannot say that the trial court's finding as to her earning capacity is clearly erroneous.

For the above reasons, we reverse the award of alimony. On remand the court should calculate the income attributable to the equity in the house awarded to Virginia and the cost of appropriate substitute housing. The court should also calculate the taxes on Virginia's anticipated net income. When these calculations are made, it may be that no additional provision for Virginia's support will be necessary. If additional provision is necessary, however, the court should adjust the property division in Virginia's favor so that her needs can be met without an award of alimony.

The other points raised are mooted by this disposition.[6] The award of attorney's fees to Virginia should be vacated because of the changes which must be made in the decree. After those changes are made the court is authorized to enter an award of attorney's fees in light of the parties relative economic situations, their earning power, and such other factors as may be germane. *Johnson v. Johnson,* 564 P.2d 71 (Alaska 1977), *cert. denied,* 434 U.S. 1048, 98 S.Ct. 896, 54 L.Ed.2d 800 (1978).

REVERSED and REMANDED.

RABINOWITZ, Chief Justice, joined by COMPTON, Justice, concurring.

Virginia and Ben Hilliker were married for thirty-one years. The superior court took "particular cognizance" of this fact in its finding that Virginia was therefore "entitled to maintain a semblance of the lifestyle to which she has become accustomed if the resources are available to provide such a result."[1] Despite the foregoing, the court has directed the superior court on remand to impose a property distribution that could leave Virginia with less than one-half of the marital property, and annual income of less than one-fifth of Ben's, and the possibility that she will be required to sell the family home. Such a potential result would be grossly unfair.

The superior court attempted, by means of an award of alimony, to enable Virginia to maintain a semblance of the way of life

6. To secure the alimony award, the trial court ordered Ben to maintain Virginia as a named beneficiary on his life insurance. Because we reverse the award of alimony in this case, this order is likewise reversed.

1. The superior court entered the following relevant findings of fact:

**V**

In this case, the court takes particular cognizance of the fact that this is not a marriage of 10 or 20 years, but a marriage of over 30 years.

**VI**

While the court does not specifically find that Defendant would not or could not have attained the position in life which he now enjoys without the assistance of Plaintiff, nevertheless, it is clear that Plaintiff invested her life in Defendant's career, and it appears that throughout this relationship the Defendant's career has received paramount and primary consideration with respect to where the parties lived and whether or not Plaintiff could seek any independent career in the field for which she was trained.

**VII**

In a case where, by agreement of the parties, the wife has devoted her primary efforts toward homemaking, the wife is entitled to maintain a semblance of the lifestyle to which she has become accustomed if the resources are available to provide such a result.

**VIII**

The court finds that these parties have not lived excessively, but have enjoyed a very comfortable lifestyle during the past....

....

**XII**

In reviewing the totality of the circumstances of the parties, the court finds that the Plaintiff will require an income of at least $25,000.00 per year, after taxes in order to maintain and sustain her lifestyle without the necessity of dissipating and liquidating the property awarded to her from the marital estate.

to which she has become accustomed. As the majority correctly notes, we have repeatedly held that where property can provide support, alimony should not be awarded. The award of alimony should therefore be reversed, and the marital property redistributed in a manner which treats Virginia equitably. In short I would reverse the award of alimony and remand with instructions that Virginia be awarded a share of the marital property that will enable her to maintain a semblance of the lifestyle to which she has become accustomed, taking particular note of the $85,000 savings account which was originally awarded to Ben.[2]

2. The factors enunciated in *Merrill v. Merrill,* 368 P.2d 546, 547–48 n. 4 (Alaska 1962) and *Wanberg v. Wanberg,* 664 P.2d 568, 574–75 (Alaska 1983) should provide guidance to the superior court in its reconsideration of the distribution of the marital estate after cancelling the alimony award.