**Kenneth J. HAMMER, Appellant,**

v.

**Katherine F. HAMMER, Appellee.**

No. S–8415.

Supreme Court of Alaska.

Nov. 12, 1999.

---

**32.** 17 AAC 40.340(d)(3) (emphasis added).

**33.** *See* 17 AAC 40.340(d)(1).

Mary E. Guss, Ketchikan, for Appellant.

Loren Domke, Loren Domke, P.C., Juneau, for Appellee.

Before MATTHEWS, Chief Justice, COMPTON, EASTAUGH, FABE, and BRYNER, Justices.

## OPINION

BRYNER, Justice.

### I. INTRODUCTION

The superior court awarded long-term alimony to Kenneth Hammer's former spouse, Katherine (Kathi), in light of her physical disability, lack of employment skills, and minimal job prospects. The court also ordered Ken to pay child support for the Hammers' son, who resides with Kathi. Ken contends that Alaska law does not permit long-term alimony and that the evidence did not justify awarding alimony here. He also contends that the superior court erred in establishing his child support obligation without calculating his adjusted annual income. We affirm the award of alimony, concluding that Alaska law allows long-term alimony awards and that the evidence establishes that the award

actually entered was just and necessary. But we hold that a remand is necessary because the superior court erred in failing to calculate Ken's adjusted annual income—an error potentially affecting its child support and alimony decisions.

## II. FACTS AND PROCEEDINGS

Ken and Kathi Hammer married in Petersburg in 1973; Kathi filed for divorce in July 1996. While married, they had three children. Only the youngest, Jens, was still a minor at the time of trial.

Kathi was forty-five years old at the time of trial. She has been deaf since infancy. Her education includes high school and bookkeeping training. Kathi's primary employment was as a homemaker and mother. Although Kathi had few employment skills, she occasionally worked as a bookkeeper, spending a total of about four and one-half years of her twenty-three-year marriage in bookkeeping jobs. At the time of divorce, she was capable of earning about $15,000 annually.

Ken was forty-six years old at the time of trial and had worked for the Alaska Marine Highway System since 1974. He had received steady salary increases in this position and by the time of trial enjoyed gross earnings of $91,000. As time permitted, Ken also worked as a commercial fisherman and diver. Although his income from these activities varied annually, his gross earnings from fishing for the year before trial totaled $9,600.

The Hammers' primary marital assets included the family residence, a Petersburg warehouse with adjacent tidelands property, and five retirement accounts related to Ken's marine highway employment. The court awarded the family residence to Kathi and the warehouse to Ken. It awarded the benefits from two of the five retirement accounts to Kathi, ordered Ken and Kathi to share equally in the proceeds from two other accounts, and retained jurisdiction over the remaining account, which had not yet vested. In total, the court awarded property valued at $148,720 to Kathi and $148,574 to Ken, exclusive of the two retirement accounts that Kathi and Ken will share equally.

The court also awarded Kathi primary physical custody of Jens and ordered Ken to make child support payments to Kathi. In establishing Ken's child support payment, the court noted that his gross annual income exceeded $95,000. But it did not calculate his adjusted annual income. Instead, evidently assuming that a gross income that high left no need for more precise calculation, the court simply concluded that Ken's adjusted annual income exceeded $72,000—the income cap established in Alaska Civil Rule 90.3(c)(2) for purposes of calculating child support payments. Accordingly the court ordered Ken to make monthly child support payments to Kathi of $1,200—the payment specified under Rule 90.3(a)(2) for a non-custodial parent with one child whose adjusted annual income equals or exceeds the $72,000 cap.

The court went on to find that "Kathi's unique circumstances and the illiquidity of most of the marital assets justify the award of long-term alimony." More specifically, the court found that Kathi's need for long-term alimony resulted from her disability, her limited work experience and job prospects, her continuing parental obligations, and the lack of readily available marital funds to meet her ongoing needs:

> Her circumstances include very little job experience gained during a marriage of long duration while she cared for [three] children, physical impairment (deafness) which severely limits her income-earning potential and necessitates medical bills and the need to travel for medical services, and her responsibility to provide single parenting to the parties' child for three more years. The great bulk of the marital assets are tied up in retirement accounts and the parties' home.

Relying on these findings, the court ordered Ken to pay Kathi alimony of $1,400 per month until July 2000, when Jens reaches age eighteen, and $1,600 per month thereafter until Kathi remarries or begins to receive payments from Ken's retirement accounts.

The court based the amount of this award on its estimate of Kathi's financial needs and employment prospects. It began by determining that Kathi's reasonable monthly expenses would total $2,600 and that her monthly earning capacity after taxes would be $1,000. But the court concluded that Kathi "should not be required to seek employment while she has the responsibility of

caring for Jens." Thus, by setting alimony at $1,400 per month during this period, the court supplemented Kathi's child support income in an amount that yielded total payments equaling Kathi's monthly needs. And by increasing Kathi's alimony from $1,400 to $1,600 after Jens's eighteenth birthday, the court sought to maintain payments commensurate with Kathi's needs, since Kathi would then lose $1,200 in monthly child support payments but would be free to work and could expect to gain approximately $1,000 in monthly earnings.

Ken appeals, contending that the award of long-term alimony is legally improper and factually unwarranted and that the amount of the child support award is based on a flawed calculation of his income.

## III. THE SUPERIOR COURT PROPERLY AWARDED LONG–TERM ALIMONY TO KATHI BUT BASED THE AMOUNT OF THE CHILD SUPPORT AWARD ON AN INCORRECT DETERMINATION OF KEN'S INCOME.

### A. Alaska Law Permits Long–Term Alimony When "Just and Necessary."

■ In challenging the superior court's alimony order, Ken first questions whether Alaska law permits long-term awards of alimony.[1] But the plain language of AS 25.24.160(a)(2) expressly authorizes courts to award alimony "for a limited or indefinite period ... as may be just and necessary."[2] In ordinary usage, an "indefinite" award is one of "unlimited" duration or one "continuing with no immediate end."[3] We must interpret this statutory language according to its common meaning unless it has acquired a particular meaning through legislative definition or prior judicial construction.[4]

Ken suggests that our recent case law has applied AS 25.24.160(a)(2) narrowly, defining only two permissible categories of alimony— rehabilitation and reorientation alimony— each involving awards of brief duration.[5] But Ken is mistaken. We have acknowledged the concept of long-term alimony in a number of cases.[6] Thus, in keeping with AS 25.24.160(a)(2), our case law allows alimony of indefinite duration when it is "just and necessary."[7]

### B. The Court Did Not Abuse Its Discretion in Finding Long–Term Alimony Just and Necessary.

■ Ken next asserts that an extended alimony award is in any event not justified

1. This is a question of law that we review de novo. See Fitzgerald v. Puddicombe, 918 P.2d 1017, 1019 (Alaska 1996).

2. AS 25.24.160(a)(2) states:
(a) In a judgment in an action for divorce or action declaring a marriage void or at any time after judgment, the court may provide
(2) for the recovery by one party from the other of an amount of money for maintenance, for a limited or indefinite period of time, in gross or in installments, as may be just and necessary without regard to which of the parties is in fault; an award of maintenance must fairly allocate the economic effect of divorce by being based on a consideration of the following factors:
(A) the length of the marriage and station in life of the parties during the marriage;
(B) the age and health of the parties;
(C) the earning capacity of the parties, including their educational backgrounds, training, employment skills, work experiences, length of absence from the job market, and custodial responsibilities for children during the marriage;
(D) the financial condition of the parties, including the availability and cost of health insurance;

(E) the conduct of the parties, including whether there has been unreasonable depletion of marital assets;
(F) the division of property under (4) of this subsection; and
(G) other factors the court determines to be relevant in each individual case....

3. Webster's Third New International Dictionary 1147 (1967).

4. Alaska Hous. Fin. Corp. v. Salvucci, 950 P.2d 1116, 1121 (Alaska 1997).

5. Ken cites Davila v. Davila for the proposition that "[t]here are two distinct types of continuing spousal support[,] ... rehabilitative alimony ... [and] [r]eorientation alimony." See 908 P.2d 1027, 1033 n. 9 (Alaska 1995) (citations and internal quotations omitted).

6. See, e.g., Gallant v. Gallant, 945 P.2d 795, 801 (Alaska 1997); Jones v. Jones, 835 P.2d 1173, 1178–79 (Alaska 1992); Hilliker v. Hilliker, 755 P.2d 1111, 1112 (Alaska 1988).

7. Hilliker, 755 P.2d at 1112 (quoting AS 25.24.160(3)); accord Gallant, 945 P.2d at 801.

under the facts of the present case. In support of this assertion, he reviews at length the evidence that favors his position. Yet our function on appeal is not to reweigh the evidence; we review alimony awards for abuse of discretion and will reverse an award only when definitely and firmly convinced that the superior court made a mistake.[8]

Here the trial court carefully considered the evidence in light of the statutory factors governing awards of alimony.[9] The court justified the long-term award based in part on Kathi's lack of work experience, her responsibilities as Jens's primary custodial parent, and her deafness, lack of job prospects, and limited ability to retrain for employment. It found that all of these factors severely impaired Kathi's employability. The court also found that Kathi's needs could not be met through an uneven division of marital assets.

While Ken argues that the record does not support the court's findings, we disagree. Ken asks us to analyze each of Kathi's circumstances in isolation, but we believe the superior court's cumulative approach is more appropriate.[10] We note that Kathi will be raising Jens as a single parent, undergoing job retraining, coping with her thyroid problem and undertaking associated travel, as well as supervising repairs to the marital residence. In facing all of these demands, she will be challenged by her deafness, limited work experience, limited education, and

lack of nearby family. The difficulties Kathi will face in attempting to be self-sufficient are a consequence of her long-term marriage. Furthermore, as the superior court accurately observed, Kathi's work in the home allowed Ken to produce the wealth that is the current source of the marital estate's economic value.

In short, our review of the record discloses substantial evidence supporting the court's findings and persuades us that the court's alimony award did not amount to an abuse of discretion. We thus affirm the court's findings with respect to Kathi's economic needs and earning potential. We also affirm its conclusion that a long-term award of alimony is both just and necessary.

## C. *The Court Erred in Computing Ken's Income.*

Ken maintains that the superior court erred in determining the award of his child support obligation on the basis of his gross annual income rather than his adjusted annual income. He also maintains that the court's mistaken focus on his gross income unfairly influenced its ruling on the issue of alimony.

Ken's argument has merit. Civil Rule 90.3(a) requires courts to calculate child support awards on the basis of "adjusted annual income"; the rule defines that term as a "parent's total income from all sources minus" various mandatory deductions and expenses, including "federal income tax, social security tax, [and] mandatory retirement deductions."[11] Here, the superior court did

---

**8.** *Dodson v. Dodson*, 955 P.2d 902, 905 (Alaska 1998).

**9.** These factors are set out in AS 25.24.160(a)(2)(A)-(G). *See supra* note 2. Ken argues in part that the superior court did not adequately address the income-producing potential of the retirement accounts and other property that it awarded to Kathi. But the income-producing capacity of property is a statutory factor that the court must consider in deciding on an equitable property division. *See* AS 25.24.160(a)(4)(I) (providing that courts must examine "the income-producing capacity [of property]" in dividing a marital estate). That factor does not directly apply to decisions on alimony, which, as noted above, are governed by subsection 160(a)(2). Moreover, it is unclear from the

record whether the disputed accounts have any present income-producing potential; we note that the parties disagree concerning the accounts' current availability. Because the superior court will have discretion to reconsider the property division on remand, Ken may ask the court to give this issue further consideration.

**10.** *See Gallant*, 945 P.2d at 801–02 (awarding long-term alimony to spouse who managed home during marriage, possessed limited work experience, and suffered from health problems).

**11.** Civil Rule 90.3(a) provides:

(a) A child support award in a case in which one parent is awarded sole or primary physical custody ... will be calculated as an amount

not calculate Ken's adjusted annual income for purposes of establishing his child support payment; it simply concluded, based on Ken's $95,000–plus gross annual income, that his adjusted income would exceed Rule 90.3's $72,000 income cap. Given Rule 90.3(a)'s express directive to calculate adjusted annual income, the court erred in using Ken's gross annual income as the basis for its child support award.[12]

■ Nevertheless, given the sizeable amount by which Ken's gross annual income exceeds the $72,000 cap for adjusted annual income, it is appropriate to inquire whether this error was harmless. In this regard, Ken contends that several significant components of his gross income would have been deductible had the court actually calculated his adjusted annual income. First, Ken correctly asserts that the court should have deducted from his gross income the more than $17,000 in federal taxes that the state withheld from his prior year's wages; Rule 90.3(a)(1)(A) expressly requires this deduction.[13] Ken next asserts that the court should have deducted his mandatory Supplemental Benefit System (SBS) withholdings. Again, he is correct, since these mandatory withholdings are akin to mandatory retirement expenses, which Rule 90.3(a)(1)(A) specifically lists as deductible.[14]

Ken further questions the court's findings concerning his gross earnings as a commercial fisherman. Noting that his annual income from fishing commercially fluctuated drastically over the three years before trial, he contends that the court should have used a three-year average income instead of his prior year's earnings to predict his future income. Ken also argues that the court erred in failing to deduct self-employment taxes and out-of-pocket expenses from his gross fishing income when it calculated his income.

This court has approved income averaging where a parent's income undergoes yearly fluctuations.[15] Moreover, the Commentary to Rule 90.3 permits the practice in appropriate cases.[16] Furthermore, the Commentary to Rule 90.3 makes clear that income from self-employment includes "gross receipts minus the ordinary and necessary expenses required to produce the income."[17] The Commentary further provides that courts have discretion to determine which business expenses may be deducted.[18] Nevertheless,

---

equal to the adjusted annual income of the non-custodial parent multiplied by a percentage specified in subparagraph (a)(2).

(1) Adjusted annual income as used in this rule means the parent's total income from all sources minus:

(A) mandatory deductions such as federal income tax, social security tax, mandatory retirement deductions and mandatory union dues;

(B) child support and alimony payments arising from prior relationships which are required by other court or administrative proceedings and actually paid;

(C) child support for children from prior relationships living with the parent, calculated by using the formula provided by this rule; and

(D) work related child care expenses for the children who are the subject of the child support order.

**12.** *Cf. Neilson v. Neilson*, 914 P.2d 1268, 1275–76 (Alaska 1996) (failure to deduct obligor's State of California income taxes from income calculation was clear error); *Bergstrom v. Lindback*, 779 P.2d 1235, 1236 (Alaska 1989) (recognizing the mandatory-deductions clause of Rule 90.3(a)(1)(A)).

**13.** Rule 90.3(a)(1)(A) is set out *supra* note 11; *see also Neilson*, 914 P.2d at 1275–76 (ruling that the lower court's failure to deduct obligor's State of California income taxes from income calculation was clear error).

**14.** *See supra* note 11.

**15.** *See Zimin v. Zimin*, 837 P.2d 118, 123 n. 9 (Alaska 1992).

**16.** *See* Alaska R. Civ. P. 90.3 Commentary III.E.

**17.** Alaska R. Civ. P. 90.3 Commentary III.B.

**18.** *See id.; see also Renfro v. Renfro*, 848 P.2d 830, 833 (Alaska 1993) (internal quotations omitted) (quoting *Coghill v. Coghill*, 836 P.2d 921, 926 (Alaska 1992)) (holding that the trial court has discretion, on the evidence presented, to choose "the best indicator of . . . future earning capacity").

the superior court did not acknowledge the option of income averaging in its findings nor did it explain its reasons for relying on Ken's most recent year of earnings. In addition, the court failed to mention any fishing-related taxes or expenses in its findings. This lack of findings precludes accurate review of the court's decision to attribute $9,600 to Ken as annual fishing income.[19]

■ Finally, Ken argues that the court erred in failing to deduct $11,533.25 in state per diem. Marine highway employees receive per diem for out-of-pocket expenses, generally for meals and lodging when they are in foreign ports. For certain items, such as hotels and some meals, employees must provide receipts to receive compensation. These expenses are not taxed. For other expenses, employees receive a contractual daily rate and need not submit receipts. These expenses are taxed.

At trial, the superior court suggested that only Ken's untaxed per diem would be deductible from gross income for purposes of computing adjusted annual income; the court's comments implied that his taxed per diem covers non-necessary expenses and should therefore be counted in adjusted income.[20] Ken contends that this ruling is mistaken and that all of his per diem must be excluded from adjusted annual income. But we find the superior court's reasoning sound and conclude that it did not err in distinguishing between taxed and untaxed per diem for purposes of calculated adjusted annual income.[21]

---

**19.** *See Davila v. Davila,* 876 P.2d 1089, 1094–95 (Alaska 1994) (holding that the trial court must make adequate findings, particularly regarding the financial needs and abilities of both parties); *accord Renfro,* 848 P.2d at 834.

**20.** At trial, Ken's counsel suggested that the .court deduct both taxable and non-taxable per diem, because "[i]t just reimburses him for what he had to spend...." The court replied, "I don't think the federal government believes that. Why would they be taxing him, then?"

**21.** Though the point became moot at the end of trial because the court did not actually calculate Ken's adjusted annual income, it will have renewed relevance on remand.

---

Even excluding Ken's taxed per diem as a permissible deduction from gross income, the potential cumulative impact of the other allowable deductions casts serious doubt upon the superior court's conclusion that Ken's adjusted annual income exceeds $72,000. If this conclusion was mistaken, the mistake might have had a direct impact on the court's child support order; the mistake also might have indirectly influenced its decision on alimony. Under these circumstances, the failure to calculate Ken's adjusted annual income cannot be deemed harmless.

## IV. CONCLUSION

Accordingly, we AFFIRM the superior court's award of long-term alimony but REMAND for calculation of Ken's adjusted annual income. If the calculation establishes that Ken has an adjusted annual income of less than $72,000, the superior court will be required to recalculate Ken's child support obligation and should also reconsider its original award of alimony to determine whether it continues to be just and necessary.[22]

FABE, Justice, concurring in part and dissenting in part.

I agree with the court that the trial judge properly awarded long-term alimony to Kathi. And I agree that the trial court should have performed the calculations and adjustments needed to reach a precise figure for Ken's adjusted annual income. But its failure to do so does not require a remand of this case for further findings. Ken's gross income exceeds $100,000 per year. Even after taking into account all arguably proper

---

**22.** Ken separately claims error in the value the superior court attributed to the warehouse and tidelands lot adjacent to the family residence in Petersburg. The court valued the property at $29,300 and awarded it to Ken. The parties agree that the court erred in failing to deduct from this value the current debt of $5,422.26 owed on the property. On remand, the court should revalue this property and determine whether this change warrants an adjustment of the overall property division.

We also note that the written findings in the record incorrectly state that the parties have four, rather than three, children. This mistake has no effect on the judgment but should be corrected on remand in the interest of accuracy.

deductions, his adjusted gross income tops Rule 90.3's income cap of $72,000. Because the trial court's bottom line was correct, its failure to perform the necessary calculations is harmless. I would therefore affirm the child support obligation established by the superior court.

The superior court made a specific finding that Ken's gross income exceeded $100,000 for 1996. This figure was comprised of "[t]otal gross earnings from the ferry system [of] $91,391.05; Permanent Fund dividend [of] $1,131; [and] commercial fishing income [of] $9,600," totaling $102,122.05. The court identifies three deductions that the trial judge should have made to Ken's gross income in determining Ken's adjusted annual income for Rule 90.3 purposes: federal income taxes of $17,000; mandatory SBS of $3,843; and non-taxable per diem of $6,287. These adjustments total $27,298 and, when subtracted from Ken's gross income, render an adjusted annual income of $74,824.05. Thus, if the majority were to give the appropriate level of deference to the trial court's income findings, it could only conclude that the trial court's conclusion that Ken's adjusted annual income exceeded Rule 90.3's $72,000 cap was correct.

Yet the court chooses to question the trial judge's finding regarding Ken's fishing income because the trial judge "did not acknowledge the option" of averaging Ken's fishing income over several years and "failed to mention" any fishing-related taxes or expenses in its findings.[1] In so doing, the court ignores the fact that neither Rule 90.3 nor our case law compels income averaging. As the commentary to Rule 90.3 recognizes, income averaging is not required—it is merely a tool that the trial court "may choose" to employ when past income has been erratic.[2] While the trial court has the choice of income averaging in such cases, it need not exercise this option nor need it make express findings when it elects not to do so. It was thus wholly appropriate for the trial court to rely on Ken's 1996 fishing income in determining his adjusted annual income for that year.

Nor did the trial court miss any significant fishing expenses or taxes. Ken testified that his only fishing expenses for 1996 were $400–$500 in "actual out-of-pocket outlays" including his "share of fuel and groceries, clothes, a share of the gear that was lost, hooks and ganions." And there was no testimony or argument at trial about the "fishing taxes" that apparently concern the court.[3] Thus, the trial court's failure to address fishing expenses was at most a $500 error, resulting in a 1996 fishing income of $9,100. Indeed, Ken's lawyer conceded at trial that Ken's fishing income for 1996, after out-of-pocket expenses, "was approximately $9000 *net.*" (Emphasis supplied.) Thus, even if the trial court neglected to consider fishing-related expenses, this would not affect the conclusion that Ken's adjusted annual income exceeded $72,000.

In sum, I do not believe that a remand is necessary in this case. The superior court did not err in its findings on Ken's gross income for 1996, and after the appropriate adjustments to that gross income figure are made, Ken's adjusted annual income still exceeds Rule 90.3's $72,000 income cap. Thus, the trial court's failure to perform all necessary calculations in determining child support was harmless. For this reason, I respectfully dissent.

---

**1.** Op. at 200.

**2.** Alaska R. Civ. P. 90.3 Commentary III.E.

