NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JESSE BERG, | ) | |
| | ) | Supreme Court No. S-15812 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-02-01386 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| CORINNE BERG | ) | AND JUDGMENT[*] |
| (n/k/a Corinne Zehnder), | ) | |
| | ) | No. 1705 – December 5, 2018 |
| Appellee. | ) | |
| _____ | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Vanessa White, Judge.

Appearances: Jesse Berg, pro se, Kodiak, Appellant. Maurice N. Ellis, Law Office of Maurice N. Ellis, Anchorage, for Appellee.

Before: Stowers, Chief Justice, Fabe, Maassen, and Bolger, Justices. [Winfree, Justice, not participating.]

## I. INTRODUCTION

An obligor appeals a child support order, arguing that the superior court erred in declining to hold an evidentiary hearing in a child support modification matter to determine how his per diem and "Fringe Add-On" income should be classified for child support purposes. He also claims that the court erred in calculating his income for child support purposes by basing its calculation on an annual rather than seasonal work

---

[*]    Entered under Alaska Appellate Rule 214.

schedule and in calculating his allowable deductions. Finally, the obligor claims that the court abused its discretion in setting the effective date for the child support order based on the date that he was served a motion to suspend visitation, arguing the motion did not provide him notice that child support was at issue. We affirm.

## II. FACTS AND PROCEEDINGS

### A. Facts

Jesse Berg and Corinne Berg (now known as Corinne Zehnder) were married in October 1998 and have two minor children. They divorced in July 2003 and agreed to joint legal and shared physical custody of their children;[1] the terms of their settlement agreement were read into the record. The court discussed Jesse's custody award in terms of visitation.[2]

### B. Proceedings

In August 2013 Corinne moved to suspend Jesse's visitation with their daughters, who were then twelve and thirteen and residing primarily with Corinne in Wasilla. Around the same time Jesse, who was an ironworker primarily employed in construction, relocated to Kodiak for work.

In July 2014 the superior court held a hearing on Corinne's motion to suspend visitation. Six days later the court placed its oral decision on the record: the

---

[1] Legal custody is not an issue on appeal.

[2] We use the word "visitation" because that is the word the court used in reference to Jesse's time with the children. But the terms of the parties' settlement agreement demonstrate that they agreed to shared physical custody because the agreement provided that Jesse would have both children at least 30% of the year. *See* Alaska R. Civ. P. 90.3 cmt. IV.A ("The shared custody calculation . . . applies only if the other parent will have physical custody of the child at least thirty percent [110 overnights] of the year . . . .").

court denied Corinne's motion to suspend visitation but modified the parties' custody and visitation schedule, concluding that "because [Jesse] is no longer living in the [Matanuska] Valley, this is no longer a shared custody arrangement for child support calculation purposes." The court directed Jesse to file a proposed order denying Corinne's motion to suspend visitation; it also ordered him to file a current child support affidavit with calculations, his 2013 tax return, his four most recent pay stubs, and a proposed child support order. In October 2014, the court entered written orders memorializing its oral order denying Corinne's motion to suspend visitation, setting Jesse's child support obligation at $2,700 per month based on an adjusted annual income in excess of $120,000,[3] and explaining its findings on Jesse's per diem income, "Fringe Add-On" income,[4] the effective support date, and its projection of Jesse's earning capacity.

In response to the court's July 2014 order on the record, Corinne filed a proposed child support calculation. Corinne calculated Jesse's annual gross income to be $179,667.47 plus his Permanent Fund Dividend for a total of $181,548.48. After allowable deductions, Corinne calculated Jesse's adjusted annual net income for child support purposes to be $152,858.81.

Jesse opposed Corinne's calculations and argued that his per diem and "Fringe Add-On" compensation should not be counted as income for the purposes of

---

[3]     Alaska Civil Rule 90.3(c)(2) caps child support when an obligor's adjusted annual income exceeds $120,000, in which case a court "may make an additional award only if it is just and proper."

[4]     The "Fringe Add-On" income is a separate line item listed on Jesse's pay stubs in a box labeled "Add-Ons" that also includes his itemized per diem compensation. The pay stubs do not explain the term "Fringe Add-On."

calculating child support. Citing *Hammer v. Hammer*[5] for the proposition that untaxed per diem pay should be excluded from income for purposes of calculating child support, Jesse asserted that his per diem compensation was not taxable income but was intended to offset the high cost of living in Kodiak and therefore was not income for purposes of calculating child support. Jesse further asserted that the "Fringe Add-On" compensation was a mandatory retirement contribution that should be deducted from the calculation of his gross income.

Jesse also argued that the court should calculate his earnings based on a seasonal, ten-month wage rather than an annual employment work schedule because he was "only guaranteed employment on his current job through October of 2014." Finally he argued that the effective date for the child support order should be December 6, 2013, rather than September 1, as his decision to remain in Kodiak during that time was "involuntary" based on financial, employment, and legal obligations that prevented him from fully engaging in the previous custody and visitation schedule. Accounting for his claimed per diem exclusion and retirement deductions, Jesse calculated that his adjusted annual income for child support purposes was $67,635 with a monthly payment of $1,521.79.

In response to Jesse's objections Corinne pointed out that Jesse's pay stubs listed his per diem income as taxed income and that it therefore should be included in his income for child support purposes. Referring to the Commentary to Alaska Civil Rule 90.3, Corinne argued that Jesse's per diem income was a "perquisite[] or in-kind compensation" similar to employer-provided housing and transit benefits, which, according to the Commentary, should be included as income "to the extent that they are

---

[5]    991 P.2d 195, 201 (Alaska 1999).

significant and reduce living expenses.'"[6] Citing *Childs v. Childs*,[7] Corinne contended that Jesse's per diem income was like the non-taxed benefits provided to Alaska military personnel — such as cost-of-living allowances and housing allowances — because the purpose of the per diem was a cost-of-living adjustment.

In addition Corinne challenged Jesse's claim that the "Fringe Add-On" pay itemized on his pay stub was a mandatory retirement contribution eligible for a deduction because nothing indicated the funds were contributions to a retirement plan, whether mandatory or voluntary. She also disputed Jesse's assertion that his income should be calculated on a seasonal, ten-month work schedule because Jesse had been employed full time in Kodiak for a year and because Jesse had admitted during the custody hearing that he would be able to transfer to a new job site in Kodiak when his current project ended.

Finally Corinne asserted that the September 1, 2013 date selected by the superior court as the effective date for the child support order was proper under the requirements of Rule 90.3(h)(2) because Jesse had been served with her motion to suspend visitation in August. She alleged that Jesse had fully relocated to Kodiak by the beginning of September and that the parties' two daughters had been living full time with her since then. Thus she argued that the court's decision to set September 1 as the effective date was appropriate because Jesse no longer exercised shared physical custody of the children after August.

The superior court set the effective date for child support as September 1, 2013, "because that [was] approximately the time when [Jesse] was no

---

[6]      Alaska R. Civ. P. 90.3 cmt. III.A.19.

[7]      310 P.3d 955, 961-62 (Alaska 2013) (holding that an obligor's military housing allowance constitutes income for calculating a child support award).

longer able to fully exercise his previous visitation and custody schedule." The court also awarded Corinne primary physical custody of the children and adopted her proposed child support order setting Jesse's child support obligation at $2,700 per month.

The court later entered another order with findings regarding "the disputed issues for calculating child support." First, the court explained that September 1 was the correct effective modification date for child support because this date reflected the "first full month after [Corinne] filed her [m]otion to [s]uspend [d]efendant's [v]isitation" and "[t]he children [had] been in the primary custody of [Corinne] throughout this period." Next, the court explained that Jesse could not deduct his per diem compensation from his gross annual income because his primary residence was in Kodiak. The superior court distinguished Jesse's case from *Hammer v. Hammer*,[8] pointing out that the employee in *Hammer* was at sea and "away from [his] primary residence when [he] received per diem pay." The court in this case concluded that "[Jesse's] per diem is more akin to a cost[-]of[-]living adjustment" and therefore counted as income for child support purposes.

The court also explained that Jesse failed to establish that his "Fringe Add-On" pay was "actually a retirement benefit" because his pay stubs listed these add-ons as a type of income and based on the amount of his federal income tax withholding, they appeared to be taxable income. The court noted that Jesse's 2013 W-2 earnings statement did not list any deduction for retirement and that "[Jesse's] [federal] income withholding would be nearly 30% of his wages" if the add-on amounts were not calculated as income. The court further observed that Jesse had provided insufficient support for his contention that the add-ons were not income to be included for calculating

---

[8]     991 P.2d at 201.

child support. Finally, the court stated that "while [Jesse] may not be guaranteed employment indefinitely," his pay stubs and 2013 W-2s supported Corinne's calculation of his gross annual earning capacity as set out in her proposed child support order.

Jesse moved for reconsideration of the court's child support order. He reiterated the arguments outlined in his objections to Corinne's proposed child support order. In addition, Jesse requested reconsideration of the court's decision to issue the order without first holding an evidentiary hearing "as a violation of his right to due process," asserting he had "anticipated that with the parties' factual disputes concerning his income and deductions . . . [t]he court would convene an evidentiary hearing on child support before issuing a modification order."

In response, Corinne maintained that the court's order was correct. Corinne argued that Jesse had failed to submit evidence sufficient to support his claim that the "Fringe Add-On" pay was a mandatory retirement contribution and that the court's conclusion that Jesse did not adequately demonstrate why he should receive a deduction for this amount was "supported by the lack of evidence presented."

She further argued that Jesse's claim that the court should have calculated additional allowable deductions was moot because, even if the court had considered the $51,813.12 in deductions to which Jesse claimed he was entitled, his net income would still exceed the $120,000 income cap under Rule 90.3(c)(2), which the court had used to determine Jesse's child support obligation. Finally, Corinne contended that Jesse's claim that the court denied him due process by failing to hold an evidentiary hearing lacked merit because he never requested a hearing, failed to provide the court with sufficient evidence regarding his income, received adequate notice of the child support calculations and filings, and had adequate opportunity to represent his interests with respect to those calculations.

The court denied Jesse's motion for reconsideration. Jesse appeals.

## III. STANDARD OF REVIEW

We review a trial court's decision not to hold an evidentiary hearing as a question of law subject to our independent judgment.[9] "[W]hether a trial court violated a party's due process rights is a question of law, which we review de novo."[10] "[W]hen a party fails to request an evidentiary hearing we will review a court's failure to sua sponte conduct an evidentiary hearing only for plain error."[11] We will find plain error where "an obvious mistake has been made which creates a high likelihood that injustice has resulted."[12]

"We review an award of child support, including a modification to such an award, for abuse of discretion, which we will find only when, based on a review of the entire record, we are left with a definite and firm conviction that the trial court made a mistake."[13]

---

[9]     *Limeres v. Limeres*, 367 P.3d 683, 686 (Alaska 2016) (citing *Hartley v. Hartley*, 205 P.3d 342, 346 (Alaska 2009)).

[10]     *Childs*, 310 P.3d at 958.

[11]     *Moore v. Olson*, 351 P.3d 1066, 1077 (Alaska 2015) (citing *In re Estate of Fields*, 219 P.3d 995, 1011 (Alaska 2009)).

[12]     *Id*. (quoting *Johnson v. Johnson*, 239 P.3d 393, 407 (Alaska 2010)).

[13]     *Swaney v. Granger*, 297 P.3d 132, 136 (Alaska 2013) (first citing *Faulkner v. Goldfuss*, 46 P.3d 993, 996 (Alaska 2002); then citing *Nass v. Seaton*, 904 P.2d 412, 414 (Alaska 1995)).

A trial court's "factual findings, including findings regarding a party's income [and] imputation of income," are reviewed for clear error.[14] "[T]he superior court's interpretation of the civil rules" is reviewed de novo[15] as is its decision regarding the appropriate method to calculate child support.[16]

## IV. DISCUSSION

### A. The Superior Court Was Not Required To Hold An Evidentiary Hearing.

Jesse contends that there were factual disputes relevant to the classification of his income for child support purposes under Civil Rule 90.3 and that the superior court erred in not holding an evidentiary hearing to determine whether his weekly per diem pay was taxed income intended to offset expenses when working away from home and whether his "Fringe Add-On" pay was a mandatory retirement contribution. Corinne responds that there were no factual disputes regarding Jesse's per diem pay because Jesse admitted that the per diem pay was an adjustment for his increased cost of living in Kodiak. Further, she argues the relevant issue for the court in determining how to classify his per diem pay was not whether it was taxable, "but . . . whether it constituted a reimbursement for necessary work[-]related expenses [he] incurred . . . on behalf of the company" rather than a cost-of-living adjustment. Corinne asserts that Jesse submitted

---

[14] *Sharpe v. Sharpe*, 366 P.3d 66, 68-69 (Alaska 2016); *Wilhour v. Wilhour*, 308 P.3d 884, 887 (Alaska 2013) (citations omitted); *see also* Alaska R. Civ. P. 52(a) ("Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.").

[15] *Sharpe*, 366 P.3d at 69 (citing *Wolff v. Cunningham*, 187 P.3d 479, 482 (Alaska 2008)).

[16] *Childs v. Childs*, 310 P.3d 955, 958 (Alaska 2013) (citing *Swaney*, 297 P.3d at 136).

no documentation supporting his argument that the "Fringe Add-On" pay was a mandatory retirement contribution even after she had identified it "as an additional non-taxed employer provided perquisite" and that he failed to timely request an evidentiary hearing.

We have held that "when a party fails to request an evidentiary hearing we will review a court's failure to sua sponte conduct an evidentiary hearing only for plain error."[17]  Jesse did not request an evidentiary hearing until he filed his motion for reconsideration.  We have explained that a motion for reconsideration is not the proper means to raise issues for the first time,[18] and it is also not the proper means to initially request a hearing.  We perceive no plain error by the superior court in not holding a hearing.  Trial courts commonly enter child support orders based only on the financial information submitted by parties and the Child Support Services Division (CSSD).  Here, the parties provided the court with five 2013 earning statements from Jesse's employer, four recent pay stubs, and Jesse's child support affidavit.  This is precisely the kind of financial documentation trial courts typically consider when calculating child support.  Although Jesse also filed a document created by his employer that in general terms described the employer's retirement program, that document notably contained no information about Jesse's participation in the program or his "Fringe Add-On" pay.

---

[17]     *Moore*, 351 P.3d at 1077 (citing *In re Estate of Fields*, 219 P.3d 995, 1011 (Alaska 2009)).

[18]     *Jaymot v. Skillings-Donat*, 216 P.3d 534, 544 (Alaska 2009) ("A trial court is 'under no obligation to consider an issue raised for the first time in a motion for reconsideration.'  An issue raised in this manner is untimely and is not properly before the court on appeal." (quoting *Blackburn v. State, Dep't of Transp. & Pub. Facilities*, 103 P.3d 900, 908 (Alaska 2004))).

Similarly, Jesse's affidavit filed with the court contained no specific information indicating that his "Fringe Add-On" pay was a retirement contribution.

The superior court considered the information that had been provided and found that there was no indication the "Fringe Add-On" pay was a retirement contribution. The record supports this finding. The court also considered Jesse's per diem pay in light of his employment circumstances and found that it was "more akin to a cost[-]of[-]living adjustment and, as such, is recognized as income for child support purposes." We conclude these findings are not clearly erroneous and that the court did not commit plain error in not holding an evidentiary hearing.

Jesse also argues his right to due process was violated by the court's failure to conduct a hearing. We disagree. As we explained in *Moore v. Olson*, "procedural due process does not guarantee that a party will receive an evidentiary hearing on all material fact disputes because '[a] party may waive the right to an evidentiary hearing . . . by failing to request one before the court rules on the matter.' "[19] We conclude that the superior court did not deny Jesse due process in declining to hold an evidentiary hearing.

**B. The Superior Court Did Not Err In Calculating Jesse's Income For Child Support Purposes Under Civil Rule 90.3.**

**1. Per diem**

Jesse argues that the court erred in considering his per diem income for purposes of child support because it is not taxed and "is intended to compensate the employee for the additional expenses he incurs when working at a remote site and which

---

[19] 351 P.3d at 1077 (alterations in original) (quoting *DeNardo v. Maassen*, 200 P.3d 305, 315 (Alaska 2009)).

expenditures are necessary to be available for work and to perform his job duties."[20]

We review the superior court's application of law to the facts of a case using our independent judgment,[21] and we review the court's factual findings, including findings about a party's income, for clear error.[22] We independently review the superior court's interpretation of civil rules and its decisions regarding the appropriate way to calculate child support.[23]

In its October 2014 child support order, the superior court entered a series of findings "as to the disputed issues for calculating child support." Addressing Jesse's claim that his per diem income should be deducted from his gross income, the court applied our decision in *Hammer v. Hammer*.[24] In *Hammer*, we affirmed the superior court's decision to deduct only untaxed per diem, rather than taxed per diem, from gross income for purposes of computing adjusted annual income on the basis that the taxed per

---

[20]    Jesse also raises for the first time on appeal the argument that the superior court's determinations about his tax liability were erroneous based on the IRS Employer Tax Guide. We do not address this argument because arguments raised for the first time on appeal are improper. *Hoffman Constr. Co. of Alaska v. U.S. Fabrication & Erection, Inc.*, 32 P.3d 346, 355 (Alaska 2001) ("As a general rule, we will not consider arguments for the first time on appeal.").

[21]    *Rausch v. Devine*, 80 P.3d 733, 737 (Alaska 2003).

[22]    *Sharpe v. Sharpe*, 366 P.3d 66, 68-69 (Alaska 2016).

[23]    *Id.* at 69 (citing *Wolff v. Cunningham*, 187 P.3d 479, 482 (Alaska 2008)); *Childs v. Childs*, 310 P.3d 955, 958 (Alaska 2013) (citing *Swaney v. Granger*, 297 P.3d 132,136 (Alaska 2013)).

[24]    991 P.2d 195, 201 (Alaska 1999).

diem included non-essential expenses.[25]  Here, the superior court distinguished Jesse's per diem from the untaxed per diem that qualified for a deduction by pointing out that unlike the workers in *Hammer* who received per diem pay while they were working at foreign sea ports away from home,[26] Jesse received per diem pay while working in the location of his primary residence; as a result, the superior court found that "[h]is per diem [was] more akin to a cost[-]of[-]living adjustment and, as such, is recognized as income for child support purposes."

On appeal, Jesse repeats his argument that *Hammer* stands for the proposition that untaxed per diem pay should be excluded from income for purposes of calculating child support.  But contrary to Jesse's assertion, the relevant distinction in *Hammer* is whether the per diem payment was a reimbursement (untaxed per diem that included meals and some lodging) or a cost-of-living adjustment (taxed per diem that included miscellaneous expenses).[27]  We find no error with the superior court's application of *Hammer*, and we conclude that the superior court did not err in its factual determination that Jesse's per diem is income and in declining to deduct it from his total gross income.

## 2.    "Fringe Add-On"

Jesse also argues that the superior court erred in not considering his "Fringe Add-On" as a mandatory retirement deduction and including it as income when calculating child support.  The court's order regarding child support included several findings related to its determination that the "Fringe Add-On" was not a retirement

---

[25]    *Id*.

[26]    *See id.*

[27]    *See id*. at 201-02.

contribution entitled to deduction. The court explained that it had examined Jesse's pay stubs and W-2 earnings statements to identify retirement deductions. Finding none explicitly listed the court determined that the add-ons appeared to be a form of income. The court also found that the "Fringe Add-On" amounts were taxable income because they were listed as a form of income on his pay stubs and because Jesse's federal withholding would be unusually high if the add-ons were not considered income.

We find no factual or legal error in the superior court's determination that the "Fringe Add-On" amounts did not qualify as mandatory retirement deductions under Rule 90.3 and were income for the purposes of calculating Jesse's adjusted annual income.[28]

### 3. Employment schedule

In his briefing to the superior court, Jesse argued that the court should calculate his earnings based on a seasonal, ten-month wage rather than an annual employment schedule because he was "only guaranteed employment on his current job through October 2014." On appeal he contends that the superior court erred "in failing to consider the fact that Jesse works in construction and that much of his work is seasonal" and in failing to make findings on this issue.

In its order the court made the following factual finding:

> While [Jesse] may not be guaranteed employment indefinitely, his pay documentation (i.e. his pay stubs and his 2013 W-2s) demonstrate that his earning capacity is what is proposed by [Corinne] in her proposed child support order and associated calculations.

We apply the clearly erroneous standard when reviewing a trial court's factual findings

---

[28]    *See also* Alaska R. Civ. P. 90.3 cmt. III.D.1. ("Mandatory retirement contributions are a deduction.").

as part of its determination whether to modify child support — including findings about a party's income.[29]

In *Kowalski v. Kowalski*, we held that when imputing income the trial court must consider the obligor's earning history.[30] Here, the superior court made a written finding that it considered Jesse's earning capacity regardless of whether he was "guaranteed employment indefinitely": an annual gross income of $181,548.47 based on the financial documentation that he provided to the court. The court's rationale is supported by guidance in the Commentary to Civil Rule 90.3, stating that "[c]hild support is calculated as a certain percentage of the income which will be earned when the support is to be paid. This determination will necessarily be somewhat speculative because the relevant income figure is expected future income. The court must examine all available evidence to make the best possible calculation."[31] The court's written findings reflect a consideration of Jesse's work history and earning capacity, and we conclude that the court did not clearly err in calculating Jesse's income on the basis of an annual projection.

### 4. Allowable deductions

In his Statement of Points on Appeal, Jesse disagrees with the superior court's calculation of his allowable deductions[32] and requests that we review "[w]hether

---

[29]    *Wilhour v. Wilhour*, 308 P.3d 884, 887 (Alaska 2013).

[30]    806 P.2d 1368, 1371-72 (Alaska 1991).

[31]    Alaska R. Civ. P. 90.3 cmt. III.E.

[32]    In his motion for reconsideration Jesse expanded on this argument, asserting that the superior court's calculation of $28,689.67 in allowable deductions on
(continued...)

the [s]uperior [c]ourt erred in allowing [a]ppellant only $28,689.67 in 'allowable deductions' from $181,548.47 in gross annual income for federal income tax, Social Security and Medicaid tax and unemployment insurance tax." But Jesse asserts only the general question whether the trial court correctly applied the law in calculating child support. Jesse's argument about the superior court's allowable deductions can be appropriately considered as part of his general assertion that the superior court erred in calculating child support, which we review for clear error.

We have concluded above that the superior court did not err in including Jesse's per diem and "Fringe Add-On" payments as income and in calculating Jesse's annual gross income as $181,548.47. The court calculated Jesse's permissible deduction as $28,689.67. Because this deduction resulted in an adjusted annual income of $152,858.80, the adjusted income amount exceeded Rule 90.3(c)(2)'s cap of $120,000.

In his brief to us Jesse does not assert a specific amount he claims the court should have used for deductions, but in his motion for reconsideration he argued that amount was $51,813.12. While we find no error in the superior court's deduction calculation, even if it had erred the error would have been harmless. Subtracting Jesse's number ($51,813.12) from his gross annual income ($181,548.47) produces a result of $129,735.35. This amount is greater than the Rule 90.3(c)(2) $120,000 cap, so Jesse's child support under this calculation would be the same as what the superior court ordered.

---

**32**(...continued)
the child support order was error because, according to the CSSD Online Calculator, at the same level of income he should have been allowed $51,813.12 in deductions. Because Jesse did not adequately brief this argument regarding the deduction amount on appeal, it is waived. *Petersen v. Mut. Life Ins. Co. of N.Y.*, 803 P.2d 406, 410 (Alaska 1990).

**C.      The Superior Court Did Not Abuse Its Discretion In Setting The Effective Date For The Child Support Order As September 1, 2013.**

Jesse argues that the superior court erred in setting September 1, 2013, as the effective date for the child support order. Corinne maintains this date is correct because it is the first day of the month after she filed her motion to suspend visitation. ("Visitation" was the word Corrine and the superior court used to describe Jesse's parenting time with the children; Jesse and Corrine actually had shared physical custody under the terms of the custody order then in effect. Corrine's motion was effectively a motion to modify custody based on Jesse's move to Kodiak and the fact that thereafter the children were in Corinne's primary custody.) Jesse does not dispute that he received notice of Corinne's motion to suspend visitation, which was filed on August 19, 2013.

Corinne argues that we have consistently held that the date a motion to modify is filed is "the proper effective date of the modification," citing *Wilhour v. Wilhour.*[33] Corinne asserts that the superior court appropriately determined that September 1, 2013 was the effective date because by then Jesse was residing in Kodiak and was no longer able to exercise shared physical custody of his daughters. Corrine argues that our precedent plainly establishes that when a parent files a motion to modify custody and where modification, if granted, would result in a change in child support, the superior court's effective date for the new child support order should be the first day of the month following the motion to modify custody. Corrine argues that is exactly what the superior court did in this case. Corrine filed her motion to suspend visitation in August 2013. The court ordered modification to physical custody changing shared physical custody to primary physical custody to Corrine because the children were living

---

[33]      *See* 308 P.3d at 889 (quoting *Boone v. Boone*, 960 P.2d 579, 585 (Alaska 1998)).

primarily with her and had been ever since Jesse moved to Kodiak to work. The court set September 1, 2013, as the effective date for the modified child support obligation because this was the first day of the month following Corrine's motion to modify custody.

Civil Rule 90.3(h)(2) prohibits most retroactive modifications of "[c]hild support arrearage" and provides that a modification may be "effective on or after the date that a motion for modification, or a notice of petition for modification . . . , is served on the opposing party." Our case law has not been entirely consistent on the issue of which "motion for modification" may satisfy Rule 90.3(h)(2). In *Millette v. Millette*, for example, we held that the earliest effective date allowed for the modification of child support was the date the father received notice of the mother's motion for modification of child support, which was months after the superior court had ordered a temporary change in custody.[34] In *Swaney v. Granger*, however, we held that a child support modification could be effective as far back as the date of the motion to modify custody; the father in that case "concede[d] that [the mother's] motion to modify custody satisfied . . . Alaska R. Civ. P. 90.3(h)(2) . . . , even though her request to modify custody was silent as to child support," and we recognized that "the change of a child's primary

---

[34]     177 P.3d 258, 266 (Alaska 2008); *see also Wright v. Wright*, 22 P.3d 875, 879 (Alaska 2001) ("The only documents that satisfy the requirements of Rule 90.3 are motions or petitions for modification . . . ."); *State, Dept't of Revenue, Child Support Enf't Div., ex rel. Husa v. Schofield*, 993 P.2d 405, 409 (Alaska 1999) ("[W]e specifically rejected the idea that documents not mentioned in the text of the rule can be the 'functional equivalent' of a motion or petition to modify." quoting *Boone v. Gipson*, 920 P.2d 746, 751 (Alaska 1996));("Since the exception in [Civil Rule 90.3(h)(2)] only refers to motions for modification, and contains no indication that 'functional equivalents' of motions for modification also suffice, we conclude that nothing short of a motion or petition for modification satisfies the requirement . . . .").

physical custodian from one parent to the other ordinarily will require modification of an existing support order."[35]

Recently, in *Geldermann v. Geldermann*, we looked at the purposes behind the retroactivity bar in order to harmonize our case law.[36] We noted that Rule 90.3(h)(2) restates the federal prohibition of retroactivity found in 42 U.S.C. § 666(a)(9)(C), which requires that child support payments not be "subject to retroactive modification . . . except that . . . modification [may be permitted] with respect to any period during which there is pending a petition for modification, but only from the date that notice of such petition has been given" to the other party.[37] We noted that this provision does not dictate the title, form, or substance of the "motion for modification" necessary to satisfy the retroactivity bar.[38] We also considered comments by the United States Department of Health and Human Services regarding this provision and found that they "focus[ed] primarily on the importance of two factors: (1) notice that child support is at issue, and (2) that the notice be formal — that is, that it involve the court."[39] We recognized that "a motion for modification of custody based on an existing, de facto change in physical custody will usually provide the other parent the same 'fair warning that support may

---

[35]    297 P.3d 132, 136-37 & n.15 (Alaska 2013).

[36]    *Geldermann v. Geldermann*, 428 P.3d 477, 487 (Alaska 2018).

[37]    *Id.* (first alteration in original) (quoting 42 U.S.C. § 666(a)(9)(C)).

[38]    *Id.*

[39]    *Id.*

change' as the parent would receive from an explicit motion to modify child support."[40] We concluded that the date of such a custody motion may serve as the effective date for a modification of child support and found that this was consistent with federal law.[41]

In this case, Corinne's motion to suspend visitation was actually a motion to modify custody and was based on Jesse's move to Kodiak, which caused a de facto change in physical custody. This is precisely the type of situation we described in *Geldermann*. Therefore, the superior court did not abuse its discretion in setting the first day of the month following Corrinne's motion as the effective date for the child support order.

## V. CONCLUSION

The superior court did not err in declining to hold an evidentiary hearing and in calculating of Jesse's child support under Civil Rule 90.3. The superior court also did not abuse its discretion in setting the effective date for child support. We AFFIRM the superior court's decisions.

---

[40] *Id.* (quoting *Boone v. Boone*, 960 P.2d 579, 585-86 (Alaska 1998)); *see also Wells v. Barile*, 358 P.3d 583, 589 (Alaska 2015) ("[A] significant modification of the physical custody schedule is likely to require a new child support determination regardless of whether a parent requests it."); *Wilhour v. Wilhour*, 308 P.3d 884, 889 (Alaska 2013) ("[R]easons for [our] preference [for using the date the motion was served as the effective date] include that 'child support reflects the child's current needs'; 'child support is both based on and paid out of the obligor's current income'; and 'service . . . gives the opposing party . . . fair warning that support may change . . . , thus 'minimiz[ing] prejudice when relief is granted effective as of the service date.' " (quoting *Boone*, 960 P.2d at 585)).

[41] *Geldermann*, 428 P.3d at 487.

# In the Supreme Court of the State of Alaska

Jesse Berg,

          Appellant,

    v.

Corinne Berg (n/k/a Corinne Zehnder),

          Appellee.

)
)
)
)
)
)
)
)
)
)
)
)

Supreme Court No. **S-15812**

**Order**
Petition for Rehearing

Date of Order: **12/05/2018**

Trial Court Case # **3PA-02-01386CI**

Before:     Stowers, Chief Justice, Maassen and Bolger, Justices, and Fabe, Senior Justice* [Winfree and Carney, Justices not participating]

On consideration of the Petition for Rehearing filed on **11/23/2016**,

**IT IS ORDERED**:

1.    The Petition for Rehearing is **GRANTED**.

2.    MO&J No. 1600, issued on 11/23/2016, is **WITHDRAWN**.

3.    MO&J No. 1705, is issued on this date in its place.

Entered by direction of the court.

Clerk of the Appellate Courts

*Marilyn May*

Marilyn May

cc:    Supreme Court Justices
       Judge White
       Trial Court Appeals Clerk
       Publishers

---

* Sitting by assignment made under article IV, section 11 of the Alaska Constitution and Alaska Administrative Rule 23(a).

*Berg v. Berg*
Supreme Court No. S-15812
Order dated December 5, 2018
Page 2

Distribution:

Maurice N Ellis
Law Offices of Maurice Ellis
731 I St Ste 203
Anchorage AK 99501

Jesse Berg
P.O. Box 1833
Kodiak AK 99615