*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| CLINTON SWANEY, | ) | |
| | ) | Supreme Court No. S-14356 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-04-09668 CI |
| v. | ) | |
| | ) | O P I N I O N |
| AIMEE GRANGER, | ) | |
| | ) | No. 6762 – March 22, 2013 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Eric A. Aarseth, Judge.

Appearances: Laurence Blakely and Allison Mendel, Mendel & Associates, Anchorage, for Appellant. Notice of non-participation filed by Appellee.

Before: Fabe, Chief Justice, Carpeneti, Winfree, and Maassen, Justices. [Stowers, Justice, not participating.]

FABE, Chief Justice.

## I. INTRODUCTION

In May 2011, the superior court modified an existing child support order, specifying that the modification was to be effective as of March 2007. But because the motion requesting modification was not filed until February 15, 2008, the superior court's order constituted a retroactive modification. In addition, the superior court modified the child support award based on its finding that the father's income exceeded

the maximum amount specified in Alaska Rule of Civil Procedure 90.3(c)(2). Because retroactive modification of child support is prohibited and because the superior court's determination of the amount owed did not conform to the analysis specified in Rule 90.3(a), we vacate the superior court's modification of the child support order and remand this case for further proceedings.

## II. FACTS AND PROCEEDINGS

When Aimee Granger and Clinton Swaney divorced in 2005 they had four minor children, born between 1993 and 2003. In granting the divorce, the superior court awarded the parents joint legal custody and named Aimee the children's primary physical custodian. The superior court granted Clinton visitation rights and ordered Clinton to pay Aimee $3,000 per month in child support. The child support award was based on the couple's agreement that Clinton's income exceeded $100,000 annually, the maximum amount specified at the time by Civil Rule 90.3(c)(2).[1]

---

[1] Civil Rule 90.3(a) provides a formula for the determination of child support awards in cases where one parent has primary physical custody. The formula is based on a percentage of the non-custodial parent's income. Rule 90.3(c)(2) provides that, with certain exceptions, the amount of the non-custodial parent's income to be used in determining child support is capped at a specific amount. In December 2005, when the couple's divorce was finalized, the cap was $100,000; it was increased to $105,000 on April 15, 2009. Supreme Court Order Nos. 1526 (Feb. 1, 2005) and 1686 (Dec. 19, 2008). In the order on appeal in this case, the superior court applied $105,000 as the cap for the entire period from March 2007 forward. As explained in the commentary to Rule 90.3, this was error; courts are to apply the income cap in effect for the month for which support is being calculated. Alaska R. Civ. P. 90.3 cmt. VI.E.*2*. Thus, assuming the father's income exceeded $105,000 for the entire period, the superior court should have applied a cap of $100,000 before April 15, 2009 and $105,000 thereafter. (The commentary to Alaska R. Civ. P. 90.3 has not been officially adopted by this court, but it provides useful guidance in applying the rule. *See Caldwell v. State, Dep't of Revenue, Child Support Enforcement Div.*, 105 P.3d 570, 573 n.6 (Alaska 2005)).

In July 2006, the superior court temporarily changed the children's primary physical custodian to Clinton and ordered Aimee to pay Clinton $200 per month in child support.[2] In November 2007, the superior court denied Aimee's motion to terminate the temporary custody order and reinstate the December 2005 custody order. In doing so, the superior court made "explicit . . . that it has found there has been a substantial change in circumstances from the original custody order, leading to (among other things) the interim order."

In February 2008, Aimee again moved to be named as the children's primary physical custodian, as well as their sole legal custodian. In her motion, she stated that, in accordance with the recommendation of the custody investigator, the children had been residing with her since December 2007.[3] In April 2008, the superior court granted her motion. The superior court indicated that it would issue "the appropriate child support orders" after the parents filed updated child support guideline affidavits. But for reasons not apparent from the record, the superior court did not issue new child support orders at that time.

In April 2010, Superior Court Judge Eric A. Aarseth, to whom the case had been assigned in the interim, determined that the support arrangement should be modified to reflect the custody arrangements that had been in place since March 2007. The superior court held a hearing in December 2010 and January 2011 that focused in large part on the income that Clinton, a small-business owner, had derived from his

---

[2]     The change in custody was intended to allow a custody investigator time to investigate allegations that one or more of the children had suffered abuse while in Aimee's care. In December 2007, the investigator recommended that Aimee be reinstated as the children's primary physical custodian.

[3]     This arrangement was at odds with the custody order that was in effect until April 2008.

businesses during 2007 and 2008. In calendaring the hearing, the superior court told the parties that it intended to issue two support orders. The first order would be for the period March through November 2007, when the parents shared physical custody, and the second order would be effective as of December 2007, when Aimee reassumed primary physical custody.[4] The orders were to be based on Clinton's income in 2007 and 2008.

At the hearing, Clinton, who in 2005 had stipulated to having an annual income of more than $100,000, testified that his income had declined significantly by 2007 and 2008. He testified that he had operated a drywall contracting business in 2005. He also pointed out that he had formed a partnership with Aimee's brother-in-law several years earlier to build and sell houses "on spec." When that partnership was dissolved in 2006, the partners divided the remaining lots. Clinton built houses on his lots and sold them during the following years. The primary source of revenue for his business during the period he was building and selling houses was from that activity, not from drywall work. Clinton stopped building houses following a market decline in the middle of the decade; he built his last house in 2006. But during 2007 and 2008, Clinton's business sold several houses that were already built and also sold assets used in the construction business. Clinton testified that in spite of the sales in 2007 and 2008 the business operated at a loss during those years. He testified that they were "horrible" years for his

---

[4]    Under Civil Rule 90.3(b), when parents share physical custody a support award is calculated using the incomes of both parents. *McDonald v. Trihub*, 173 P.3d 416, 423 (Alaska 2007). Here, according to the superior court, only Clinton's income was at issue, because the court found that Aimee had no income for the relevant period. The superior court did not apply, and did not explain its reason for not applying, the minimum support award provision of Rule 90.3(c)(3). But, given our holding that the award modification for the entire period during which the parents shared physical custody was erroneous, any error the superior court may have made in calculating that award was harmless.

business. By 2010 Clinton had returned to operating only a drywall business, which he claimed was unable to generate an income similar to the income he had derived from building houses.

Clinton's 2007 individual income tax return, which he filed jointly with his wife, Mandy, showed an adjusted gross income of negative $237,533 and medical expenses of $24,071. The return showed no items of positive income, instead reflecting losses from Clinton's various businesses.

Clinton's drywall and construction business's return reflected receipts of $487,310, which, when reduced by the cost of goods sold, left a gross income of $12,161. After deduction of more than $165,000 in expenses for the year, the business declared a net loss for tax purposes of $151,327. According to Clinton and his accountant, the bulk of the business's receipts that year were from the sale of existing homes and the sale of business assets. The deductions claimed by the business included amounts for repairs and maintenance, rents, taxes and licenses, interest, depreciation, advertising, training and education, supplies, bank service charges, dues and subscriptions, insurance, office supplies, postage and delivery, professional fees, travel, utilities, telephone, automobile expenses, fees, a commission fee, storage, equipment rental, and meals and entertainment. Testimony as to the nature and amount of many of these deductions was presented to the superior court.

The business return also contained an "item affecting shareholder basis," further denominated as a "property distribution," of $104,157, which Clinton's accountant testified reflected a distribution to Clinton. The accountant explained that this amount represented money that Clinton's business could not account for, and that the amount was therefore categorized for tax purposes as a distribution for the benefit of the sole shareholder, Clinton. The accountant testified that Clinton may have spent these

funds for personal expenses or for business expenses for which he did not have documentation.[5]

The evidence showed that Clinton's business improved in 2008. While in 2007 the business declared a loss for federal tax purposes of more than $150,000, in 2008 it declared net income of $794. This figure was determined by subtracting $426,280 as the cost of goods sold and deducting $161,879 for various expenses from the business's gross receipts of $588,953.

On their 2008 individual tax return, Clinton and Mandy declared $22,500 as income from salary, $3,794 from rent, $30 in interest, $9,072 from Mandy's real estate business, and $6,538 from PFDs. In addition, Clinton received a distribution of $38,308 from his business, which his accountant testified was similar to the $104,157 distribution Clinton received in 2007. But after deducting more than $200,000 for a "Prior Year NOL,"[6] the couple declared an adjusted gross income for tax purposes of negative $159,758.

Following the hearing, the superior court modified the existing child support award to require Clinton to pay support to Aimee. The new support orders specified different support amounts for March through November 2007 and December 2007 going forward. The superior court based the award for March through

---

[5]    Testimony was also presented about yet another business that Clinton operated with a partner during a portion of 2007. That business was targeted at providing cleanup services for damage caused by Hurricane Katrina. Clinton claimed not to have made any profit from that business, which was dissolved during the year. His individual tax return reflected a loss of $82,539 on the sale of assets from that business. No tax return for that business was submitted to the superior court.

[6]    The amount of this loss does not match any figure from the portions of Clinton and Mandy's 2007 returns that appear in the record. Neither this figure nor any other aspect of the 2008 individual return was the subject of testimony at the hearing.

November 2007 on Clinton's income in 2007, and it based the ongoing award on his income in 2008. The superior court found that in both years Clinton's income exceeded the maximum specified in Rule 90.3(c)(2). The superior court's finding regarding the 2007 income appears to have been based primarily on its characterization of the $104,157 shareholder distribution as income to Clinton. In addition, the superior court stated, without further discussion or analysis, that Clinton "likely" received some personal benefit from "many" of the deductions claimed by his business,[7] but the court did not otherwise parse the business's tax returns or analyze the net loss of more than $150,000 that the business claimed in 2007.

The superior court relied on its finding that Clinton's 2007 income exceeded the maximum under the rule as the basis for making a similar finding regarding his 2008 income. The superior court noted that in 2008 the business's receipts increased over those of 2007, while the cost of goods sold decreased, resulting in gross income of more than $162,000, compared to gross income in 2007 of less than $13,000. The superior court thus concluded that Clinton "was much better off in 2008 than in 2007," but, once again, the court did not analyze the deductions claimed by the business or address the fact that, after its expenses were deducted from its gross income, the business showed net income in 2008 of only $794.

Clinton moved for reconsideration, challenging the superior court's findings that his income in both 2007 and 2008 exceeded the cap listed in Rule 90.3(c), and raising for the first time an assertion that a portion of the superior court's order violated the rule against retroactive modification of child support awards. He also asserted for the first time that instead of considering his 2007 and 2008 income in

---

[7]     In particular, the superior court listed "supplies, office supplies, home insurance, professional fees, travel, utilities, telephone, automobiles and miscellaneous fees."

isolation, the superior court would have arrived at a more realistic portrayal of his finances by averaging his income over a number of years. The superior court denied the motion for reconsideration.

Clinton appeals the superior court's order awarding child support to Aimee. On appeal, he asserts that insofar as the award was effective before the date of Aimee's motion to modify custody (February 15, 2008) the order constitutes an impermissible retroactive modification of child support. He also challenges the superior court's findings that his income in both 2007 and 2008 exceeded $105,000.

## III.    STANDARD OF REVIEW

We review an award of child support, including a modification to such an award, for abuse of discretion, which we will find only when, based on a review of the entire record, we are left with a definite and firm conviction that the trial court made a mistake.[8] We review factual findings regarding a party's income when awarding child support for clear error.[9] The proper method of calculating child support is a question of law, which we review de novo, adopting the rule of law that is most persuasive in light of precedent, reason, and policy.[10]

---

[8]     *Faulkner v. Goldfuss*, 46 P.3d 993, 996 (Alaska 2002); *Nass v. Seaton*, 904 P.2d 412, 414 (Alaska 1995).

[9]     *Williams v. Williams*, 252 P.3d 998, 1005 (Alaska 2011) (citing *Koller v. Reft*, 71 P.3d 800, 804 (Alaska 2003)).

[10]     *Faulkner*, 46 P.3d at 996.

## IV. DISCUSSION

### A. The Superior Court's Modification Of The Support Order Before February 15, 2008 Was An Impermissible Retroactive Modification.

Clinton argues that the superior court erred by ordering a modification to the existing child support order to be effective before February 15, 2008, the date Aimee moved to modify the custody order. Because Clinton did not timely raise this issue in the superior court,[11] we review the superior court's decision for plain error, which "exists where an obvious mistake has been made which creates a high likelihood that injustice has resulted."[12] Here, the superior court's ruling meets that standard. Civil Rule 90.3 prohibits retroactive modification of existing child support orders.[13] Modifications are allowed to the extent that they are "effective on or after the date that a motion for modification . . . is served on the opposing party."[14]

On January 10, 2007, the superior court issued an order that obligated Aimee to pay Clinton $200 per month in child support. On May 29, 2007, Aimee moved

---

[11]     *See DeNardo v. GCI Commc'n Corp.*, 983 P.2d 1288, 1290 (Alaska 1999) (issue raised for the first time in a motion for reconsideration is not timely raised for purposes of appellate review).

[12]     *Paula E. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 276 P.3d 422, 436 (Alaska 2012) (internal quotation marks and citation omitted).

[13]     Alaska R. Civ. P. 90.3(h)(2); *Yerrington v. Yerrington*, 933 P.2d 555, 558 (Alaska 1997) ("Although the plain language of the rule applies only to arrearages, we have held that, appropriately interpreted, this rule prohibits both retroactive decreases and increases in child support awards . . . .") (citations omitted). Limited exceptions to the prohibition on retroactive modification apply when paternity has been disestablished or on an obligor's motion when a clerical mistake was made or the support order was based on a default amount. *Teseniar v. Spicer*, 74 P.3d 910, 915 (Alaska 2001); *see* AS 25.27.166(d); Alaska R. Civ. P. 90.3(h)(2).

[14]     Alaska R. Civ. P. 90.3(h)(2).

to clarify or correct that order, asserting that under Rule 90.3(c)(3) her obligation should have been $50 per month, and she also moved to terminate the temporary custody order on which the support order was based. On November 5, 2007, the superior court denied Aimee's motion to terminate the temporary custody order, and it issued an amended child support order under which Aimee's obligation remained $200 per month. That order was in effect when Aimee next moved to modify the custody order, on February 15, 2008.[15] Thus the superior court's order modifying the child support arrangement could be effective only as far back as February 15, 2008. Any modification intended to be effective before that date was erroneous. Clinton should not be obligated, as the result of a clear error by the superior court, to pay child support for the months in question.[16]

---

[15] Clinton concedes that Aimee's motion to modify custody satisfied the provision of Alaska R. Civ. P. 90.3(h)(2) that specifies that modification of a support award may be effective on or after the date of a motion for modification, even though her request to modify custody was silent as to child support. We note that under Rule 90.3(a) the change of a child's primary physical custodian from one parent to the other ordinarily will require modification of an existing support order.

[16] We note that although the parents testified that they shared physical custody during the months in question, under the custody order in place Clinton was the children's primary physical custodian. A court errs if it bases a support award on a custody arrangement that differs from a court-ordered arrangement. We have stated:

> Child support awards should be based on a custody and visitation order. If the parties do not follow the custody order, they should ask the court to enforce the custody order or should move to modify the child support order.
>
> . . . [T]he trial court erred to the extent it based its calculation of support arrearages on the visitation exercised, rather than the visitation ordered.

(continued...)

-10-                                                          6762

**B.** **The Superior Court Must Make Adequate Findings In Accordance With Civil Rule 90.3 In Determining Clinton's Income.**

The superior court apparently based its modified child support order for March through December 2007 on Clinton's 2007 income and its award from January 2008 forward on Clinton's 2008 income.[17] Even though we hold that the modified award is invalid for the entire period that was based on Clinton's 2007 income, we still must review the superior court's determination of the 2007 income because the court relied on that determination in finding that Clinton's 2008 income exceeded the maximum specified in Rule 90.3(c). Thus, if the 2007 determination was erroneous, the 2008 determination also must fail.

Civil Rule 90.3(a) provides the framework for determining a child support award when one parent has primary physical custody.[18] Under the rule, the foundation of a proper award is an accurate determination of the non-custodial parent's "adjusted

---

[16]    (...continued)
*Turinsky v. Long*, 910 P.2d 590, 595 (Alaska 1996) (footnote and citation omitted). *Cf. Karpuleon v. Karpuleon*, 881 P.2d 318, 320 (Alaska 1994) (parents have burden to move promptly to modify a child support order when a child changes residency).

[17]    An award of child support for a period in the past is properly based on the parent's actual income for that period. *Spott v. Spott*, 17 P.3d 52, 56 (Alaska 2001) (citing *Crayton v. Crayton*, 944 P.2d 487, 490 (Alaska 1997)). According to the commentary to Rule 90.3, an ongoing award should be based on the parent's expected income during the period in which the award will apply. Alaska R. Civ. P. 90.3 cmt. III.E. Here, in 2011, the superior court used Clinton's 2008 income as the basis for an ongoing award, apparently because at the time of the hearing the court was under the impression that its modified custody order would be effective only through May 2008. But the order ultimately issued by the superior court contains no termination date and no indication that it is not an ongoing order.

[18]    *Turinsky*, 910 P.2d at 595.

annual income."[19] The rule defines this term, and the commentary explicates the definition.[20] Together, the rule and commentary contain an extensive list of items that are properly included in, or excluded from, a parent's income.[21] The commentary specifically addresses the situation of a self-employed parent, prescribing that "[i]ncome from self-employment . . . includes the gross receipts minus the ordinary and necessary expenses required to produce the income."[22] We have approved this approach.[23] The commentary lists certain business expenses that are allowed by the IRS for federal tax purposes that are not appropriate when calculating child support, and it notes that "[e]xpense reimbursements and in-kind payments such as use of a company car, free housing or reimbursed meals should be included as income if the amount is significant and reduces living expenses."[24]

Here, the superior court found that Clinton "intermingled his business and assets with his personal income and expenses" to an extent that "made it impossible for him to prove that the cash available to him for expenses was not just as available to him

---

[19]     *Adrian v. Adrian*, 838 P.2d 808, 810 (Alaska 1992).

[20]     Civil Rule 90.3(a)(1) defines "adjusted annual income" to mean "the parent's total income from all sources" minus certain items listed in the rule. The commentary to the rule contains a list of benefits that are considered income for purposes of the rule. Alaska R. Civ. P. 90.3 cmt. III.A. Civil Rule 90.3 comments III.B, C, D, and E specifically address self-employment income, potential income, deductions, and the time period for calculating income.

[21]     Alaska R. Civ. P. 90.3(a)(1); Alaska R. Civ. P. 90.3 cmt. III.A, B, D.

[22]     Alaska R. Civ. P. 90.3 cmt. III.B.

[23]     *See, e.g.*, *Faulkner v. Goldfuss*, 46 P.3d 993, 997 (Alaska 2002); *Hammer v. Hammer*, 991 P.2d 195, 200 (Alaska 1999); *Neilson v. Neilson*, 914 P.2d 1268, 1272-73 (Alaska 1996).

[24]     Alaska R. Civ. P. 90.3 cmt. III.B.

for purposes of paying child support." The superior court thus indicated that it needed to consider Clinton's personal financial situation in tandem with that of his business. This approach was correct. But after stating that it was "not obligated to accept the federal tax return as the measure of a person's access to funds available to pay child support" and noting that not all deductions allowed under federal tax law apply to the determination of income for purposes of child support, the superior court did not examine the affairs of Clinton's business in relation to his personal finances to determine his adjusted annual income, nor did it meaningfully discuss or analyze the deductions claimed by the business.

In its finding that Clinton's 2007 income exceeded $105,000, the superior court relied primarily on its determination that the $104,157 shareholder distribution that Clinton received was income to him. Neither Clinton nor his accountant was able to adequately account for those funds. On appeal, Clinton argues that because the source of the distribution was not apparent, the distribution should not be considered as income to him. He asserts that the distribution was likely funded by money his business borrowed, which the business would have been obligated to repay. In support of this assertion, he points to uncontroverted evidence that the business incurred loans during 2007 of nearly $700,000.

We cannot determine from the superior court's findings whether the shareholder distribution was income to Clinton. Regardless of the nature of the distribution the business made to Clinton, the commentary to Rule 90.3 makes clear that a probing review of Clinton's — and his business's — financial affairs must be conducted to determine his adjusted annual income for child support purposes. We have noted that determining the adjusted annual income of a self-employed parent is generally

more complicated than determining the income of a parent who earns regular wages.[25] To determine a self-employed parent's income, the superior court must subtract the ordinary and necessary expenses required to produce the income of the parent's business from the business's gross receipts.[26] The superior court was not wrong to consider the $104,157 shareholder distribution in determining Clinton's adjusted annual income. We have held that courts should closely scrutinize parents' claimed business expenses.[27] Courts should be mindful of "the potential of a self-employed obligor to manipulate income for the purpose of avoiding payment of child support."[28] But a court may not categorically disallow all deductions without conducting a proper analysis.[29]

Because the superior court's findings regarding Clinton's financial affairs were insufficient to support its ultimate finding that Clinton's income in 2008 exceeded the maximum specified in Rule 90.3(c), we cannot affirm the superior court on this record. On remand, the superior court should determine, in accordance with Rule 90.3,

---

[25] *Saleem v. State, Child Support Enforcement Div.*, Mem. Op. & J. No. 1036, 2001 WL 34818267, *3 (Alaska, July 18, 2001).

[26] *Neilson*, 914 P.2d at 1272-73.

[27] *See id.* at 1274-75, n.8 ("The deduction of depreciation and other business expenses is a common issue when a parent owns a closely held company. Like salary, business expenses can be manipulated to affect net income, and some business deductions may have a minimal effect on the business owner's cash flow." (quoting 2 JEFF ATKINSON, MODERN CHILD CUSTODY PRACTICE § 10.23, at 525 (1986))).

[28] *Taylor v. Fezell*, 158 S.W.3d 352, 358 (Tenn. 2005). *Cf. Snow v. Snow*, 24 S.W.3d 668, 672 (Ky. App. 2000) (A trial court establishing child support has "the discretion and the duty to scrutinize taxable income and to deviate from it whenever it seems to have been manipulated for the sake of avoiding or minimizing a child support obligation.") (citations omitted).

[29] *Neilson*, 914 P.2d at 1274-75; *Watson v. Watson*, 60 P.3d 124, 128-29 (Wyo. 2002).

an appropriate award of child support beginning on February 15, 2008, the date of Aimee's motion to modify custody. In formulating its award, the superior court should be mindful that a child support award that is applicable to a past period should be based on a parent's actual income for that period, while an ongoing award should be based on the income the parent is expected to receive during the period to which the award will apply.[30] It will be up to the superior court to evaluate Clinton's argument that income averaging is an appropriate vehicle for determining the correct child support award in this case.[31]

## V. CONCLUSION

Based on the foregoing considerations, we VACATE the superior court's order modifying the existing child support order and REMAND this matter for further proceedings consistent with this opinion.

---

[30] *Spott v. Spott*, 17 P.3d 52, 56 (Alaska 2001); Alaska R. Civ. P. 90.3 cmt. III.E.

[31] *Hammer v. Hammer*, 991 P.2d 195, 200-01 (Alaska 1999) (citing Alaska R. Civ. P. 90.3 cmt. III.E).