*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

|  |  |  |
|---|---|---|
| MALLORY D., | ) | |
| | ) | Supreme Court No. S-14715 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-09-01846 CI |
| v. | ) | |
| | ) | |
| MALCOLM D., | ) | O P I N I O N |
| | ) | |
| Appellee. | ) | No. 6826 – September 20, 2013 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Eric Smith, Judge.

Appearances: Mallory D., pro se, Palmer, Appellant. Tara Logsdon and J. Matthew Hayes, Golter & Logsdon, P.C., Palmer, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

BOLGER, Justice.

## I.    INTRODUCTION

A mother appeals from an order modifying her child support obligation. She argues that the court improperly calculated the father's self-employment income and also erred by imputing a 40-hour workweek when calculating her income. We agree that the court did not conduct a sufficiently probing review of the father's business expenses, reimbursements, and in-kind contributions to determine his adjusted annual income for child support purposes. And the superior court erroneously ruled that controlling

precedent required the court to conclude that the mother was underemployed. We therefore reverse and remand for recalculation of the child support award.

## II. FACTS AND PROCEEDINGS

Malcolm and Mallory were married and had three children.[1] In August 2009 they filed a petition for dissolution of marriage.[2] Following the entry of the dissolution decree, Mallory filed a motion to modify custody on May 5, 2010.[3] After litigation in superior court and an appeal to this court, the parties were granted joint legal custody and shared physical custody of their two daughters, and Malcolm was granted primary custody of their son.[4]

On remand, the parties filed several proposed child support orders; they disputed the amount of Malcolm's income and whether Mallory was voluntarily and unreasonably underemployed. The superior court held an evidentiary hearing regarding child support on February 21, 2012. Mallory testified that she worked an average of 30 hours per week. Her wages were $18.00 per hour. She explained that her employer was a construction company that did not have full-time work for her, especially in the winter season. But her employment schedule also allowed her to drive her daughter to and from school during the weeks that she was exercising custody, so that she did not have to use day care. Mallory testified that she had applied for full-time employment in Anchorage without success. Malcolm testified that he owned a business that applied urethane foam insulation. He explained that the income tax figures used in his child support guidelines affidavit were based on information that he received from his accountant.

---

[1]    *Mallory D. v. Malcolm D.*, 290 P.3d 1194, 1197 (Alaska 2012). We use the same pseudonyms in this case that we used in our previous opinion.

[2]    *Id.*

[3]    *See id.* at 1197-98.

[4]    *See id*. at 1198-1200, 1207.

At the close of the hearing, the court invited the parties to submit post-hearing briefing regarding (1) Malcolm's deductions for the business use of his home and (2) imputation of income for Mallory. After considering the parties' post-hearing briefing, the superior court determined that Malcolm's income should be as stated in his 2011 federal income tax return and that Mallory's income would be imputed at the rate of $18 per hour for full-time employment. The court issued a new child support order effective June 1, 2010. Mallory appeals from this order.

## III. STANDARD OF REVIEW

We may reverse a child support award if the trial court abuses its discretion or applies an incorrect legal standard.[5] "We will find an abuse of discretion when our review of the record leaves us with a 'definite and firm conviction based on the record as a whole that a mistake has been made.' "[6] The correct legal standard for a child support determination is a question of law that we review independently.[7]

"Whether a party is voluntarily underemployed is essentially a question of fact."[8] "We set aside a trial court's factual findings only if they are clearly erroneous, including

---

[5] *Beaudoin v. Beaudoin*, 24 P.3d 523, 526 (Alaska 2001) (citing *Sanders v. Sanders*, 902 P.2d 310, 313 (Alaska 1995)).

[6] *Id.* at 526 (quoting *Kowalski v. Kowalski*, 806 P.2d 1368, 1370 (Alaska 1991)).

[7] *Id.* (citing *Marine v. Marine*, 957 P.2d 314, 316 (Alaska 1998)).

[8] *Ward v. Urling*, 167 P.3d 48, 52 (Alaska 2007) (citing *Robinson v. Robinson*, 961 P.2d 1000, 1004 (Alaska 1998)).

a trial court's findings regarding a party's income."[9]  We review the superior court's decision to impute income for abuse of discretion.[10]

## IV.    DISCUSSION

### A.    The Superior Court Erred By Failing To Examine Malcolm's Self-Employment Income And Expenses.

Alaska Civil Rule 90.3(a)(1) states that "[a]djusted annual income as used in this rule means the parent's total income from all sources minus" certain mandatory deductions, voluntary retirement contributions, child support and alimony payments, and child care expenses.[11]  The commentary to Rule 90.3 states:

> Income from self-employment . . . includes the gross receipts minus the ordinary and necessary expenses required to produce the income . . . . Expense reimbursements and in-kind payments such as use of a company car, free housing or reimbursed meals should be included as income if the amount is significant and reduces living expenses.[12]

This court has approved a superior court's decision to disallow business deductions if those expenses significantly reduced the parents' living expenses.[13]

In this case, the superior court credited Malcolm's testimony, and found that his 2011 tax return accurately reflected his income.  The court found that  Malcolm's

---

[9]    *Id.* (citing *Bennett v. Bennett*, 6 P.3d 724, 726 (Alaska 2000); *Koller v. Reft*, 71 P.3d 800, 804 (Alaska 2003)).

[10]    *Helen S.K. v. Samuel M.K.*, 288 P.3d 463, 473 (Alaska 2012) (citing *O'Connell v. Christenson*, 75 P.3d 1037, 1039 (Alaska 2003)).

[11]    Alaska R. Civ. P. 90.3(a)(1)(A)-(E).

[12]    Alaska R. Civ. P. 90.3 cmt. III.B.

[13]    *Coghill v. Coghill*, 836 P.2d 921, 926 (Alaska 1992) (affirming the superior court's denial of various deductions).

home office was an "ordinary and necessary" business expense.  The court's order did not discuss the extent to which expense reimbursements and in-kind payments were "significant and reduce[d] living expenses."

Mallory argues that the superior court erred by failing to require proof of Malcolm's ordinary and necessary business expenses.  In response, Malcolm claims that his 2011 tax return contained an accurate reflection of his business expenses for that year.

At the hearing, the superior court questioned Malcolm's deduction for business use of his home, which was apparently based on the use of his heated shop to store the truck containing his urethane material.  But in its final decision, the court approved the deduction for Malcolm's use of his home.

In Mallory's post-hearing briefing, she contended that about $4,933 of Malcolm's personal fuel purchases were being passed off as business expenses.  Mallory repeated this argument in a motion for reconsideration.  She pointed out that $4,078 in fuel purchases were made at the Holiday station in Meadow Lakes, which is the station that Malcolm uses to fuel up his snowmachines on his way to his family cabin.  In her motion for reconsideration, Mallory also objected to several other business expenses that she contended were actually for personal groceries, meals, cell phones, and recreational goods.  The court did not mention these other business expenses in its final decision; instead, it simply approved the deduction of the expenses shown on Malcolm's income tax return.  On appeal, Malcolm argues that all of these business expenses were legitimate.

Mallory also argues that the court's reliance on Malcolm's tax return income of $29,224 was erroneous because Malcolm had transferred $94,669 from his business account to his personal account during calendar year 2011 and because his tax return income does not match his current lifestyle.  Malcolm responds that these transfers (and his personal expenditures) do not necessarily document his business income because

they could be due to expense reimbursements, non-cash expenses like depreciation, or simply funds that were borrowed.

The superior court's order did not address whether the expenses that Malcolm claimed actually reduced his living expenses.[14] In *Swaney v. Granger*,[15] we recently explained:

> The [Civil Rule 90.3(a)] commentary specifically addresses the situation of a self-employed parent, prescribing that "[i]ncome from self-employment . . . includes the gross receipts minus the ordinary and necessary expenses required to produce the income." . . . The commentary lists certain business expenses that are allowed by the IRS for federal tax purposes that are not appropriate when calculating child support, and it notes that "[e]xpense reimbursements and in-kind payments such as use of a company car, free housing or reimbursed meals should be included as income if the amount is significant and reduces living expenses."[16]

In *Swaney*, we reversed the child support order because "the superior court did not examine the affairs of [the ex-husband's] business in relation to his personal finances to determine his adjusted annual income, nor did it meaningfully discuss or analyze the deductions claimed by the business."[17] We explained that "the commentary to Rule 90.3 makes clear that *a probing review* of [the ex-husband's] — and his business's —

---

[14]    *See* Alaska R. Civ. P. 90.3 cmt. III.B ("Expense reimbursements and in-kind payments such as use of a company car, free housing or reimbursed meals should be included as income if the amount is significant and reduces living expenses.").

[15]    297 P.3d 132 (Alaska 2013).

[16]    *Id.* at 138 (alterations in original) (footnotes omitted) (citations omitted).

[17]    *Id.*

financial affairs must be conducted to determine his adjusted annual income for child support purposes."[18]

The applicable commentary thus requires the superior court to consider the extent to which Malcolm's reimbursements and in-kind contributions were "significant and reduce[d] living expenses."[19] Mallory has identified several areas where Malcolm's reimbursements and in-kind contributions could have significantly reduced his living expenses. We thus conclude that the superior court did not apply the correct legal standard.[20] We must reverse and remand for the superior court to determine whether Malcolm's claimed business expenses were legitimate and whether Malcolm's reimbursements and in-kind contributions significantly reduced his living expenses.

Mallory also argues that the superior court erred by failing to address Malcolm's 2010 income. The child support order was effective June 1, 2010.[21] We note that the superior court had a copy of Malcolm's 2010 tax return, which was attached to his child support guidelines affidavit filed on August 9, 2011. This return shows substantially higher self-employment income that would support income for child support purposes in the amount of $62,348. On remand, the superior court should consider Malcolm's actual 2010 income and either enter a separate child support order for 2010 or average Malcolm's income to calculate child support.

---

[18] *Id.* (emphasis added).

[19] Alaska R. Civ. P. 90.3 cmt. III.B.

[20] *See Beaudoin*, 24 P.3d at 526 (explaining that a child support award will be reversed if the superior court applied the incorrect legal standard).

[21] *Boone v. Boone*, 960 P.2d 579, 585 (Alaska 1998) (stating that the service date of a motion to modify child support is the preferred effective date of a modified child support order).

**B.** **The Superior Court Was Not Required To Impute Mallory's Income From Full-Time Employment.**

When calculating child support, the superior court may impute additional income to a parent if the court finds the parent is voluntarily and unreasonably underemployed.[22] Mallory argues that the superior court erred when it imputed additional income to make her child support income equivalent to a full-time job at $18 per hour. We conclude that the superior court erred when ruling that under *Beaudoin*[23] it was required to "impute full-time income to a parent who could work full-time but chooses not to in order to meet their children's scheduling needs." In so ruling, the superior court misinterpreted our holding in *Beaudoin*.

In *Beaudoin*, the father, Michael, claimed that his ex-wife Georgia was voluntarily underemployed.[24] Georgia worked *without any compensation* in her new domestic partner's business, and she chose not to seek gainful employment elsewhere.[25] Georgia's partner estimated her work "was worth at least $7 per hour"; "Georgia held herself out to be a co-owner of the business"; and "her friends described her as a businesswoman who devoted substantial time to the business."[26] Michael pointed out that Georgia had previously held a job, and he submitted a vocational counselor's report stating that Georgia could find work paying $15 to $16 per hour.[27]

---

[22] *Sawicki v. Haxby*, 186 P.3d 546, 550 (Alaska 2008).

[23] 24 P.3d 523.

[24] *Id.* at 524.

[25] *Id.* at 525.

[26] *Id.*

[27] *Id.* at 524-25, 527.

In *Beaudoin*, the superior court denied Michael's request for an evidentiary hearing on the issue of underemployment.[28]  On appeal, we reversed and remanded for an evidentiary hearing because Michael had presented substantial evidence that Georgia would be capable of earning significantly more money and that she declined to seek employment, which raised genuine issues of material fact as to whether Georgia was "voluntarily and unreasonably" underemployed.[29]  We identified the relevant inquiry under Civil Rule 90.3 as "whether a parent's current situation and earnings reflect a voluntary and unreasonable decision to earn less than the parent is capable of earning."[30]  We emphasized that we were merely remanding for an evidentiary hearing, and we expressed no opinion as to the ultimate validity of Michael's claim.[31]  We explained that it was  "important . . . to observe that Rule 90.3(a)(4) does not rigorously command pursuit of maximum earnings.  The rule's more modest objective is to give courts broad discretion to impute income based on realistic estimates of earning potential in cases of voluntary and *unreasonable* unemployment or underemployment."[32]

Thus, contrary to the superior court's ruling in this case, *Beaudoin* does not establish a bright-line rule that "the court *must* impute full-time income to a parent who could work full-time but chooses not to in order to meet their children's scheduling needs."  This error requires reversal in this case.  There was evidence that Mallory was not voluntarily and unreasonably underemployed, including her testimony that her employer could not offer her more hours and that she had applied for other full-time jobs.

---

[28]     *Id.* at 525.

[29]     *Id.* at 530.

[30]     *Id.* at 528 (citing Alaska R. Civ. P. 90.3(a)(4) & cmt. III.C).

[31]     *Id.* at 530.

[32]     *Id.*

There is very little record support for the court's conclusion that Mallory could earn $18 per hour at full-time employment. On remand, the superior court should determine whether Mallory was voluntarily and unreasonably underemployed considering the totality of circumstances.[33]

## V. CONCLUSION

We REVERSE the superior court's order modifying child support and remand for further proceedings consistent with this opinion.[34]

---

[33] *Id.* at 528 (citing Alaska R. Civ. P. 90.3 cmt. III.C; *Pugil v. Cogar*, 811 P.2d 1062, 1066 (Alaska 1991)); *see also Sawicki*, 186 P.3d at 550 (explaining that the totality of circumstances "include such factors as whether the obligor's reduced income is temporary, whether the change is 'the result of economic factors or of purely personal choices,' the children's needs, and the parents' needs and financial abilities") (footnotes omitted) (citations omitted).

[34] Because we remand for further proceedings, we do not need to reach Mallory's additional arguments.