NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| CLINTON SWANEY, | ) | |
| | ) | Supreme Court No. S-16134 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-04-09668 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| AIMEE GRANGER, | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1614 – February 15, 2017 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Eric A. Aarseth, Judge.

Appearances: Allison Mendel and John J. Sherman, Mendel Colbert & Associates, Inc., Anchorage, for Appellant. No appearance by Appellee Aimee Granger.

Before: Winfree, Maassen, Bolger, and Carney, Justices. [Stowers, Chief Justice, not participating.]

## I.    INTRODUCTION

In a previous appeal involving the parties, we vacated a child support order because it was a retroactive modification of child support, and the superior court's determination of the amount owed did not conform to Alaska Civil Rule 90.3. On remand the superior court heard additional evidence and conducted a more detailed analysis. It then issued a new support order, followed by an order releasing jurisdiction

---

\*    Entered under Alaska Appellate Rule 214.

of the case. But the support order was based in part on factual findings not supported by the record and in part on the superior court's erroneous belief that it lacked jurisdiction, which caused it to refuse to hear additional relevant evidence. We therefore vacate both orders and remand this case for further proceedings.

## II.    FACTS AND PROCEEDINGS

### A.    Background

We explained the facts of this case in *Swaney v. Granger* (*Swaney I*)[1] and summarize them here to the extent they are relevant.

When Aimee Granger and Clinton Swaney divorced in 2005, they had four minor children. Aimee received primary physical custody and Clinton was ordered to pay her $3,000 per month in child support. As we noted in *Swaney I*, "[Alaska Civil] Rule 90.3(c)(2) provides that . . . the amount of the non-custodial parent's income to be used in determining child support is capped at a specific amount."[2] The $3,000 per month award reflected the couple's agreement that Clinton's income exceeded the then-existing cap of $100,000.

In July 2006 the superior court temporarily granted Clinton primary physical custody and ordered Aimee to pay Clinton $200 per month in child support. Then, in February 2008, Aimee moved for primary physical and sole legal custody of the children. The superior court granted Aimee's motion and indicated that it would issue a child support order after the parents filed updated child support guideline affidavits. But for reasons that were not apparent from the record, the superior court did not issue a new child support order for three more years.

---

[1]    297 P.3d 132, 133-39 (Alaska 2013).

[2]    *Id.* at 133 n.1.

When the superior court finally issued an updated child support order in 2011, it issued one award from March 2007 through November 2007 and another award from December 2007 going forward. The awards were based on income determinations for Clinton for 2007 and 2008.

Clinton was self-employed and his income came largely from building and selling houses and operating a drywall contracting business. Although Clinton's business had substantial gross income during both years, it declared a net loss of $151,327 in 2007 and a net income of only $794 in 2008 after accounting for the costs of goods sold and other expenses. After subtracting further expenses and deductions, Clinton's individual income tax returns declared negative income for both 2007 and 2008.

Despite these claimed losses, however, the superior court found that Clinton exceeded the income cap listed in Rule 90.3(c) for both 2007 and 2008. The superior court characterized a 2007 shareholder distribution of $104,157 as income to Clinton and then concluded, with little "discussion or analysis, that Clinton 'likely' received some personal benefit from 'many' of the deductions claimed by his business" in 2007.[3] "[T]he court did not . . . parse the business's tax returns or analyze the net loss of more than $150,000 that the business claimed in 2007."[4]

The superior court then made the same determination for 2008 — that Clinton's income exceeded the cap listed in Rule 90.3(c). The court relied primarily on its finding that Clinton's 2007 income exceeded the cap and its determination that Clinton's business "was much better off in 2008 than in 2007."[5] Again, the superior court did not analyze any of the specific deductions or expenses claimed by the business.

_____

[3]     *Id*. at 135.

[4]     *Id*.

[5]     *Id*.

We vacated the superior court's child support award for two reasons. First, to the extent the order awarded Aimee past child support from March 2007 to February 15, 2008, the date Aimee moved to modify custody, we found that the award was a retroactive modification of child support prohibited by Rule 90.3(h)(2). Second, to the extent the order awarded Aimee child support after February 15, 2008, we determined that "the superior court's findings regarding Clinton's financial affairs were insufficient to support its ultimate finding that Clinton's income in 2008 exceeded the maximum specified in Rule 90.3(c)."[6] We therefore remanded to the superior court to conduct a "probing review of Clinton's — and his business's — financial affairs . . . to determine his adjusted annual income for child support purposes."[7]

We also noted another problem with the superior court's child support order: It appeared to require Clinton to pay past child support for 2009, 2010, and 2011 based on his income in 2008. We instructed the superior court to "be mindful that a child support award that is applicable to a past period should be based on a parent's actual income for that period."[8]

B.    Proceedings On Remand

On remand the superior court held two evidentiary hearings at which Clinton presented evidence of his 2008 income and provided documentation and testimony supporting many of his claimed expenses and deductions. To the extent that the evidence is relevant to this case, we review it in our analysis of the superior court's factual findings below.

---

[6]    *Id.* at 139.

[7]    *Id.* at 138.

[8]    *Id.* at 139.

Clinton also attempted to present evidence of his past income from 2009 to the present — evidence that we specifically instructed the court to consider on remand. But the superior court refused to allow this evidence, reasoning that because the parties no longer resided in Alaska on May 30, 2008, the superior court had lost jurisdiction over the modification order and could not issue an award for past support beyond that date.

In October 2015 the superior court issued an order establishing Clinton's 2008 income for child support purposes. That order disallowed many of Clinton's claimed deductions for lack of corroborating evidence. The superior court then found that Clinton's adjusted annual income in 2008 was $129,729, which exceeded the Rule 90.3(c)(2) income cap in place in 2008.[9]

The superior court revised those findings in its child support order issued two months later. That order accounted for additional income from Clinton's PFD and additional deductions for Clinton's federal income tax, FICA, and a self-employment tax. The superior court therefore calculated Clinton's child support obligation based on an adjusted annual income of $98,681.24, which is below the cap of $100,000 in place in 2008.[10] Based on this revised income, the superior court ordered Clinton to pay Aimee $2,960 per month effective February 15, 2008. Two months later the superior court

---

[9]     The superior court appeared to believe that the applicable income cap for 2008 was $105,000. This is incorrect. As we explained in *Swaney I*, "[i]n December 2005, when the couple's divorce was finalized, the cap was $100,000; it was increased to $105,000 on April 15, 2009." *Id.* at 133 n.1. We therefore instructed the superior court on remand that it should "apply the income cap in effect for the month for which support is being calculated. Thus, assuming the father's income exceeded $105,000 for the entire period, the superior court should have applied a cap of $100,000 before April 15, 2009 and $105,000 thereafter." *Id.* (citing Alaska R. Civ. P. 90.3 cmt. VI.E.2). We again remind the superior court that it should apply the income cap in effect for the month for which the support is being calculated.

[10]     *See id.*

issued an order releasing jurisdiction effective May 30, 2008, explaining that "neither party nor any of the parties' children resided in Alaska after that date." But despite this finding, the child support order included no termination date and appears to be an ongoing award from 2008 to the present day based on Clinton's 2008 income.

Clinton now appeals the child support order issued on remand. He argues that the superior court subjected him to an elevated burden of proof and made erroneous factual findings, and he asks this court to remand for a new child support order. Alternatively, he asks this court to limit the scope of the order and find that it only applies from February 15 to May 30, 2008 — the day on which the superior court supposedly lost jurisdiction over this case.

## III. DISCUSSION

### A. Part Of The Superior Court's Calculation Of Clinton's 2008 Income Is Not Supported By The Record.

Clinton argues on appeal that the superior court required him to meet an elevated burden of proof and adopted an impermissible presumption against him. We disagree. The superior court correctly stated that Clinton only needed to show that his claimed deductions were "ordinary and necessary expenses" by a preponderance of the evidence, and the record does not indicate that the superior court subjected him to a more exacting burden of proof. But Clinton also challenges the superior court's findings that his 2008 deductions for (1) interest; (2) vehicle expenses; (3) costs associated with the sale of a house; (4) rent expenses; (5) moving expenses; and (6) salary paid to his new spouse, Mandy, were not "ordinary and necessary [business] expenses."[11] Whether an

---

[11] *Id.* at 138 (explaining that income from self-employment "includes the gross receipts minus the ordinary and necessary expenses required to produce the income" (quoting Alaska R. Civ. P. 90.3 cmt. III.B)).

expense is "ordinary and necessary" is a factual finding we review for clear error,[12] which "exists when the record as a whole 'leaves us with a "definite and firm conviction that a mistake has been made." ' "[13] We consider each of Clinton's claimed deductions in turn and conclude that some of the superior court's calculations of his 2008 income are not supported by the record.

### 1. Interest

Clinton claimed a deduction of $42,355 for "interest." The superior court disallowed it, finding that "[n]o testimony was presented directly addressing this deduction" and "[t]here is very little evidence to support" it.

We agree. Although Clinton demonstrated that he incurred this expense through his tax return and his business's profit and loss statement, he provided no explanation for why it was an ordinary and necessary business expense. The superior court's disallowance of this deduction was not clearly erroneous.

### 2. Vehicle expenses

Clinton claimed an $8,840 deduction for vehicle expenses. The superior court disallowed $5,270.05 of the $8,840 claimed and then divided the remaining expenses in half to reach a deduction of $1,784.98.

The record supports the superior court's finding that the disallowed expenses were either personal expenses or were not, as Clinton had claimed, actually related to vehicles. The court's decision to divide the remaining expenses in half was also supported by the record. Testimony indicated that the expenses were allocated between personal and business, but neither Clinton nor Steve Adami, Clinton's accountant, could

---

[12]    *Id.* at 136 (citing *Williams v. Williams*, 252 P.3d 998, 1005 (Alaska 2011)).

[13]    *Jones v. Westbrook*, 379 P.3d 963, 967 (Alaska 2016) (quoting *Jarvill v. Porky's Equip., Inc.*, 189 P.3d 335, 338 (Alaska 2008)).

explain in detail how that allocation was made, and none of the documents in the record distinguished personal vehicle expenses from business ones.  The vehicle allowance of $1,784.98 was not clearly erroneous.

### 3.     Costs associated with sale of house

Clinton claimed a $10,179.35 deduction for expenses involving the sale of a house.  The business's expense ledger states that the payment was to "Alaska Title Guaranty Agency" as part of the "Sale of 2411 W. Stonebridge."  It also includes a notation that the payment was for "Shawn — Upgrades on home in Alaska. (Deck, Floor, Tile,refrig) [sic]."  The superior court disallowed this deduction, finding that there was insufficient corroborating evidence.

The expense ledger was not a contemporaneous account of business expenses — it was prepared by Adami for the purpose of litigation using documents provided by Clinton.  Many of those documents were introduced into evidence, but Clinton has pointed to nothing in those documents or in testimony explaining the expense.  We acknowledge that this expense, if it occurred, was probably a business expense because the property was clearly a business property.  But as the superior court noted, "the sum of $10,179.35, if true, should have been supported with other corroborating evidence."  No such evidence was provided.  The superior court's disallowance of this deduction was not clearly erroneous.

### 4.     Rent expenses

Clinton claimed a $10,048.45 deduction for rent expenses.  Of that amount, $3,000 was paid to Mandy for business use of the marital home's detached garage.  The superior court allowed him to claim only a $1,500 deduction for these expenses, finding that of the $3,000 paid to Mandy, "at least $1,500 of the rent paid should be deemed income to Clinton" and that the other claimed expenses "were never explained in testimony."

Clinton argues that this ruling was incorrect. We partially agree. There was no basis to cut the $3,000 deduction in half, and Clinton should have been awarded the full deduction for that cost. But the superior court correctly noted that no evidence explained why the other claimed deductions were ordinary and necessary expenses. We therefore reverse the superior court's disallowance of the full $3,000 in rent for the garage, but we affirm the superior court's disallowance of the remaining rent expenses because that finding was not clearly erroneous.

### 5. Moving expenses

Clinton claimed a deduction of $6,570 for moving expenses related to his move from Alaska to Wyoming. The court allowed only $645.20 of the claimed deduction, finding that the move "was as much personal as it was business" and that Clinton had not separated business expenses from personal expenses.[14]

Clinton testified that his move was primarily work related. On the first trip, Clinton filled two trailers with "[m]ostly . . . all work stuff." And on the second trip, Clinton towed "equipment for building homes," including a John Deere tractor. Given these facts, a large portion of Clinton's moving expenses was almost certainly ordinary and necessary business expenses. The court's summary disallowance of these expenses because they were "as much personal . . . as business" is not supported by the record. We remand for the court to determine which moving expenses should be allowed as business expenses. The superior court is free to disallow individual expenses if it finds that they were personal and not business related. But absent some specific indication to the contrary, Clinton's moving expenses should be considered business expenses.

---

[14] The $645.20 deduction was the "sole[]" expense "connected to the business"; it reflected the cost of flying Clinton's brother-in-law to Alaska to drive a vehicle.

### 6. Mandy's salary

Clinton claimed a deduction of $22,500 for certain salary expenses paid by his business. The superior court acknowledged that this was a business expense, but found that the salary was paid to Clinton and should be included in the calculation of his income.

As Clinton points out, however, he and Mandy each received half of that amount. And under Rule 90.3 adjusted annual income generally reflects the amount paid to the obligor parent — not income of the obligor's spouse.[15] The superior court did not explain why it included the salary payments to Mandy in Clinton's income. On remand, the superior court should either allow Clinton to deduct $11,250 for Mandy's salary or explain why it is appropriate to consider Mandy's income in determining Clinton's child support obligation.[16]

### B. The Superior Court Improperly Released Jurisdiction Over The Child Support Order.

After issuing its December 2015 child support order, the superior court issued an order releasing jurisdiction over this case effective as of May 30, 2008. Clinton has not asked us to vacate the order releasing jurisdiction, but we conclude that we are required to do so as a matter of law.

---

[15] *See* Alaska R. Civ. P. 90.3(a)(1) ("Adjusted annual income as used in this rule means *the parent's* total income from all sources . . . ." (emphasis added)); Alaska R. Civ. P. 90.3 cmt. VI.B.5 ("The income of a new spouse of either the custodial or obligor parent normally will not justify a variation in support.").

[16] *See* Alaska R. Civ. P. 90.3 cmt. VI.B.5 (noting that "[e]ither party may attempt to show that exceptional circumstances exist in a particular case" justifying a variation in support based on a new spouse's income).

### 1.    Relevant procedural facts

Aimee filed the motion to modify child support that prompted this litigation in February 2008, but the superior court did not issue a modified child support order until 2011.[17]  That order used Clinton's income in 2008 as the basis for an ongoing support award from 2008 forward "apparently because . . . the [superior] court was under the impression that" it could not consider Clinton's income after May 2008.[18]  We now understand that the superior court was under this "impression" because it believed it had lost jurisdiction over the child support order as of May 30, 2008 — but we were not aware of this belief when we decided *Swaney I*.  Instead, we assumed that the court simply misapplied the rule for calculating past child support.  We therefore explained that the court's reliance on Clinton's 2008 income to issue a past award from 2008 to 2011 was improper because "[a]n award of child support for a period in the past is properly based on the parent's actual income for that period,"[19] and we instructed the superior court to consider Clinton's actual past income when it issued a new award.[20]

That instruction was ignored on remand.  Clinton came to court prepared to introduce evidence of his past income up to the present, but the superior court only allowed Clinton to present evidence of his income in 2008.  According to the superior

---

[17]    Aimee's motion only sought to modify custody and did not mention child support.  But in *Swaney I*, we treated it as a motion to modify child support for purposes of Rule 90(h)(2) because "under Rule 90.3(a) the change of a child's primary physical custodian from one parent to the other ordinarily will require modification of an existing support order."  *Swaney I*, 297 P.3d at 137 n.15.  We extend that reasoning here and find that the motion to modify custody was also a motion to modify child support for the purposes of determining jurisdiction under AS 25.25.205(a).

[18]    *Id.* at 137 n.17.

[19]    *Id.* (citing *Spott v. Spott*, 17 P.3d 52, 56 (Alaska 2001)).

[20]    *Id.* at 139 (citing Alaska R. Civ. P. 90.3 cmt. III.E).

court, it "lacked jurisdiction to rule on any motion to establish or modify child support after May 30, 2008 [because] neither party nor any of the parties' children resided in Alaska after that date." This was the first time that the superior court clearly articulated its belief that it lost jurisdiction over the child support order as of May 30, 2008.[21]

The superior court then explained to the parties that the modified order would include both a past award for February 15 to May 30, 2008 and an ongoing award from May 30, 2008 forward based solely on Clinton's 2008 income. Apparently, the superior court believed that while its jurisdictional loss prevented it from issuing a past support award for any date after May 30, 2008, it could still issue an ongoing support order effective as of May 30, 2008 (and based solely on Clinton's 2008 income). In December 2015 the superior court accordingly issued a child support order with an effective date of February 15, 2008 and no termination date. It later issued a separate order releasing jurisdiction effective May 30, 2008.

**2. We vacate the superior court's order releasing jurisdiction**.

Clinton does not challenge the superior court's release of jurisdiction. Instead, he asks us to "limit the child support order's duration to the period during which . . . Alaska had jurisdiction to modify support" — from February 15 to May 30, 2008. According to Clinton, this would allow the parties to avoid the prohibition on retroactive modification of support orders because there would be no order in place after May 30, 2008, allowing either party to seek a child support order in another jurisdiction for the time period between May 30, 2008 and the present.

---

[21] There was at least one indication in the record before this court in *Swaney I* that the superior court held this belief. The superior court issued a Notice of Intent to Dismiss Case for Lack of Jurisdiction in April 2010, finding that none of the parties had a substantial connection to Alaska. But the superior court did not follow through on that notice and went on to issue a modified child support order that was effective past May 30, 2008.

But even though Clinton has not asked us to vacate the superior court's order releasing jurisdiction, we are required to do so here. Whether a court has jurisdiction to modify a child support order presents a question of subject matter jurisdiction[22] which "may be raised at any stage of the litigation and if noticed must be raised by the court" sua sponte.[23] We must raise subject matter jurisdiction both when a court improperly takes jurisdiction and when a court improperly refuses or releases jurisdiction because "it is a time-honored maxim of the Anglo-American common-law tradition that a court possessed of jurisdiction generally must exercise it."[24] Whether a court has subject matter jurisdiction is a question of law that we review de novo.[25]

Subject matter jurisdiction to modify an existing child support order is controlled by AS 25.25.205, a provision of Alaska's version of the Uniform Interstate Family Support Act.[26] The statute was amended while this case was being litigated. Under the previous version, a court in Alaska that had issued a support order

> ha[d] continuing, exclusive jurisdiction over [that] order
>     (1) as long as [Alaska] remain[ed] the residence of the obligor, the individual obligee, or the child for whose benefit the support order [was] issued; *or*
>     (2) until each individual party ha[d] filed written consent with the tribunal of this state for a tribunal of another state to

---

[22]     *Teseniar v. Spicer*, 74 P.3d 910, 913 (Alaska 2003).

[23]     *Burrell v. Burrell*, 696 P.2d 157, 162 (Alaska 1984); *see also Robertson v. Riplett*, 194 P.3d 382, 386 (Alaska 2008).

[24]     *Ohio v. Wyandotte Chems. Corp.*, 401 U.S. 493, 496-97 (1971); *see also State v. W.P.*, 349 P.3d 181, 185 (Alaska App. 2015).

[25]     *Sherrill v. Sherrill*, 373 P.3d 486, 489 (Alaska 2016) (citing *Vanvelzor v. Vanvelzor*, 219 P.3d 184, 187 (Alaska 2009)).

[26]     42 U.S.C. § 666(f) (2012) requires states to adopt the Uniform Interstate Family Support Act. *See* AS 25.25.101, et seq.

modify the order and assume continuing, exclusive jurisdiction.[27]

The superior court never lost jurisdiction to modify the order under this version. Although none of the parties remained in Alaska after 2008, there is nothing in the record showing that any of the parties consented to jurisdiction in another state.

Under the new version — which became effective in 2015,[28] before the superior court issued its 2016 order releasing jurisdiction — an Alaska court has "continuing, exclusive jurisdiction to modify [a] child support order" it has previously issued if (1) the previous order is controlling and (2) "at the time of the filing of a request for modification, [Alaska] is the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued."[29] Both conditions are satisfied in this case. First, there is no dispute that the child support order being modified is the controlling order. As AS 25.25.207(a) explains, "[i]f a proceeding is brought under this chapter and only one tribunal has issued a child support order, the order of that tribunal is controlling." Neither party presented evidence that a court in another state has issued a child support order in this case.[30] Second, the parties lived in Alaska "at the time of the

---

[27]     Former AS 25.25.205(a) (2014) (emphasis added); *see also* ch. 57, § 5, SLA 1995 (session law enacting previous version of the statute).

[28]     Ch. 32, §§ 27-30, 107, SLA 2015 (eff. July 1, 2015).

[29]     AS 25.25.205(a)(1). Alaska also has jurisdiction regardless of residence if "the parties consent in a record or in open court that the tribunal of [Alaska] may continue to exercise jurisdiction to modify its order." AS 25.25.205(a)(2).

[30]     According to the parties, proceedings relating to this case have occurred in both Wisconsin and Wyoming, but nothing in the record shows that either state has issued a child support order. If another state has, in fact, issued a child support order, or does so in the future, the parties should notify the superior court, which should then determine if Alaska retains jurisdiction to modify its original order pursuant to AS 25.25.205. We

(continued...)

filing of a request for modification."[31]  Aimee's request for modification was filed on February 15, 2008.  According to the superior court, the last date the parties lived in Alaska was May 30, 2008, several months after the motion for modification was filed. The superior court therefore retains jurisdiction under the current version of AS 25.25.205 to modify its original support order.

Because Alaska never lost jurisdiction under the former version of AS 25.25.205(a), and because Alaska retains jurisdiction under the current version of the statute, the superior court "has and shall exercise continuing, exclusive jurisdiction" to modify the child support order in response to the February 15, 2008 motion.[32]  We therefore vacate the superior court's order releasing jurisdiction.

### C. The Superior Court Improperly Required Clinton To Pay Child Support From 2009 To 2015 Based On His 2008 Income.

As we discussed above, the superior court did not allow Clinton to present evidence of his income from 2009 to the present because of its conclusion that it lost jurisdiction in May 2008.  But because, as we have just explained, the superior court retains jurisdiction over this case, Clinton should have been allowed to present evidence of his actual income after 2008.  We therefore vacate the superior court's child support order to the extent that it requires Clinton to pay past child support from 2009 forward

---

[30]    (...continued)
also note that the current version of AS 25.25.205(b)(1) provides that the parties may consent to litigate this issue in a different state.  They are free to do so on remand, but there is no indication that they have done so at this time.

[31]    AS 25.25.205(a)(1).

[32]    AS 25.25.205(a).

based on his 2008 income.[33] We again remind the superior court that "a child support award that is applicable to a past period should be based on a parent's actual income for that period."[34]

## IV. CONCLUSION

For the reasons explained above, we VACATE the superior court's child support order and order releasing jurisdiction and REMAND for further proceedings.

---

[33] A change in custody occurred after our remand in *Swaney I*. Because we are again vacating the superior court's child support order, the superior court will be required on remand to issue a past child support award from February 2008 to the present day. In formulating that award, the superior court should consider any changes in custody that occurred during that period. *See* Alaska R. Civ. P. 90.3 cmt. V.D (explaining how child support should be calculated for divided custody arrangements).

[34] *Swaney I*, 297 P.3d 132, 139 (Alaska 2013).